**In the Interest of Melva LONG, a child.**

No. 65828.

Supreme Court of Iowa.

Dec. 23, 1981.

William J. Conroy, Jr., Des Moines, for mother-appellant.

Thomas J. Miller, Atty. Gen., John G. Black, Sp. Asst. Atty. Gen., Brent D. Hege, Asst. Atty. Gen., for appellee, State of Iowa.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK and ALLBEE, JJ.

ALLBEE, Justice.

This appeal by Denise Long, the natural mother of Melva Long, challenges the juvenile court's adjudication that Melva is a child in need of assistance. The mother's principal complaints are directed to the admission of certain evidence, including several exhibits. She also asserts that the court's finding lacks the support of clear and convincing evidence. Our review, however, satisfies us that the adjudication should be affirmed.

I. *Procedural background.*

On June 26, 1980, a petition was filed alleging Melva to be a child in need of assistance (CHINA) within the meaning of section 232.2(5)(c)(2), The Code 1979,[1] in that Melva suffered or was imminently likely to suffer harmful effects as a result of her mother's failure to exercise a reasonable degree of care in supervising Melva. Following a series of hearings on the petition, by order of October 17, 1980, Melva was adjudicated a child in need of assistance. *See* § 232.96, The Code. That order also provided for a social investigation and report, *see* § 232.97(1), The Code, the conducting of a dispositional hearing as soon as practicable, *see* § 232.99(1), The Code, and the continuation of Melva's temporary custody in the Polk County Department of Social Services, all "pending further court order." The mother, Denise, without awaiting the dispositional hearing, filed her notice of appeal on October 29, 1980.

The State now urges that this appeal should be dismissed, maintaining that the CHINA adjudication alone is not appealable because the final disposition of the petition was yet to be made by the juvenile court.

---

1. All subsequent statutory citations are like- wise to The Code 1979, unless otherwise noted.

Consequently, before addressing the merits of this appeal, we must take up the question of our jurisdiction to entertain it.

## II. *Appellate jurisdiction.*

### A. *Finality of order.*

The State's contention that a juvenile court order of adjudication in a CHINA case is not a "final" order under Iowa R.App.P. 1(a), and that such a matter does not become appealable until a dispositional order is entered, raises a question of first impression under section 232.133, The Code, governing appeals from juvenile court under the new juvenile justice act.

■ It is apparent that the new law contemplates separate hearings for adjudication and disposition. *See* § 232.99 ("Following entry of an order [adjudicating a child to be in need of assistance] . . ., the court shall, as soon as practicable, hold a dispositional hearing in order to determine what disposition should be made of the petition."). The purpose of this two-step procedure is to allow time for compliance with section 232.97, which provides that "[t]he court shall not make any disposition of the petition until a social report has been submitted to and considered by the court." This section allows, but does not require, the social report to be submitted prior to the adjudication hearing. *See* § 232.97(2). Because orders of adjudication will ordinarily be made separately from orders of disposition under the new law, it is important that we decide whether a predispositional order of adjudication is "final" and thus appealable of right under rule 1(a). We conclude that it is not.

The only Iowa juvenile case bearing on this question is *In Interest of Clay*, 246 N.W.2d 263 (Iowa 1976). At issue in *Clay* was the appealability of a juvenile court order transferring a delinquency case to the criminal division of the district court. The statute then governing appeals from juvenile court orders, section 232.58, The Code 1975, is virtually identical to that under the new law, section 232.133, The Code 1979. In pertinent part, the new statute reads:

1. Any interested party aggrieved by *any order or decree* of the juvenile court may appeal from the court for review of questions of law or fact.

2. The procedure for such appeals shall be governed by the same provisions applicable to appeals from the district court provided that when such order or decree affects the custody of a child the appeal shall be heard at the earliest practicable time.

§ 232.133(1)–(2) (emphasis added). With regard to the corresponding language under the 1975 Code, the *Clay* court said:

It could be reasonably argued that the . . . first sentence of § 232.58, if lifted out of context, permits appeal from the transfer order.

. . . .

[However, we note that] the General Assembly qualified the . . . first sentence . . . by this next noted phraseology: "The procedure for such appeals shall be governed by the same provisions applicable to appeals from the district court."

246 N.W.2d at 265. The court concluded that "the legislature did not intend, by enactment of § 232.58, an appeal as of right could be taken to the Supreme Court from any and every interlocutory order or decree entered in a juvenile court." *Id.* at 266. Thus, *Clay* makes it clear that the statute itself provides no special basis for an appeal of right in this case. As with all other orders, appealability depends on whether the juvenile court order is found to be "final."

The prevailing rule in other jurisdictions is exemplified by the following statement from a reference work produced by the National Juvenile Law Center: "Generally an order of the juvenile court is considered final when a disposition has been made following the adjudication. [Citations.] This means that the attorney *must generally wait until after the dispositional hearing to appeal a finding of neglect* or dependency." P. Piersma *et al., Law and Tactics in Juvenile Cases* 526–27 (3rd ed. 1977) (emphasis added).

A number of reasons for holding that a bare adjudicatory order is not "final" were well stated in an Arizona case, *In re Maricopa County, Juvenile Action No. J–74222*, 20 Ariz.App. 570, 571, 514 P.2d 741, 742 (1973). Although that case involved an adjudication of delinquency, much if not all of its reasoning is equally applicable to a CHINA adjudication. We state those reasons here, adapting them to Iowa law and the CHINA context where necessary.

First, the language of section 232.133(3) would suggest that an appealable order in a juvenile case is one that disposes of all issues, including disposition. That section states that "[t]he pendency of an appeal or an application therefor shall not suspend the order of the juvenile court . . . and shall not discharge the child from the custody of the court or the agency, association, facility, institution or person *to whom the court has transferred legal custody* unless the appellate court otherwise orders on application of an appellant." (Emphasis added.) This language appears to indicate that a disposition, which frequently involves a transfer of legal custody, will have been made prior to the appeal.

Second, we note that Iowa R.App.P. 5(a) requires that an appeal be taken within thirty days from the entry of the order appealed from. "Therefore, if an appeal is timely taken after the entry of a dispositional order and this is more than [thirty] days after the adjudicatory order, and if the adjudicatory order is final, such an appeal could not question the adjudicatory finding, thus laying a trap for the unwary practitioner." *Maricopa County*, 20 Ariz.App. at 571, 514 P.2d at 742.

Third, we believe that speedy disposition is crucial in CHINA cases. If a bare adjudication order were "final," an appeal could unduly delay a disposition which is essential to the welfare of the child.

Fourth, a multiplicity of appeals may be avoided by holding that the dispositional order is the only "final" order subject to appeal. "On appeal from the dispositional order, both the interlocutory order of adjudication and the order of disposition may be reviewed, avoiding the necessity of separate appeals to review each order." *Id.*

Finally, an appeal may be avoided entirely by holding that only the dispositional order is a "final," appealable order. Two of the dispositions permitted by the Iowa Code following a CHINA adjudication allow the judge to order that the child remain with the parent. *See* §§ 232.100–.101, The Code. If the juvenile court were to order one of those dispositions, the parent would probably have little desire or incentive to appeal. Thus, a requirement that appeals in CHINA cases be taken only from dispositional orders would further the goal of judicial economy, as well as the goal of making disposition as prompt as possible for the benefit of the child.

The conclusion that a CHINA adjudication without a disposition is not a "final" order would be consistent with previous Iowa case law on the subject of appealable orders. This court has said that a final judgment is one that puts the case out of court and which may be enforced by execution or in some other appropriate manner. *In re Estate of Swanson*, 239 Iowa 294, 305, 31 N.W.2d 385, 391 (1948). Neither of those criteria is met by the CHINA adjudication in this case. It has also been stated that an order is interlocutory if it directs an inquiry into a matter of fact preparatory to a final decision. *Williams v. Bourne*, 248 Iowa 189, 194, 79 N.W.2d 751, 754 (1956). In the case at bar, the juvenile court ordered a social investigation preparatory to a final decision on disposition; thus, it would appear to be interlocutory under the stated rule.

It is also noteworthy that the CHINA adjudication order in this case specifically mentioned that a subsequent dispositional hearing would be held. In this regard, the following language from *In re Marriage of McCreary*, 276 N.W.2d 399, 400 (Iowa 1979), is germane:

> A ruling is not final when the trial court intends to do something further to signify its final adjudication of the case. *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613, 614–15 (Iowa 1973). When a ruling specifically provides for

subsequent entry of a final order, the ruling itself is not a final judgment or decision. *Crowe v. DeSoto Consolidated School District*, 246 Iowa 38, 40, 66 N.W.2d 859, 860 (1954).

Based on the foregoing, we hold that an order of adjudication in a CHINA case, unaccompanied by a disposition, is not a "final" order within the meaning of rule 1(a).

B.  *Rule 1(c).*

Having decided that an order of adjudication in a CHINA case is not a "final" order for purposes of appeal, we now consider whether to entertain this particular case as an interlocutory appeal pursuant to Iowa R.App.P. 1(c). That rule permits us to treat the papers upon which the appeal is taken as the equivalent of an application for interlocutory appeal. *See* Iowa R.App.P. 2.

■ Because the welfare of the child, Melva, is at stake here, it is desirable that an early and final resolution of this matter be made without the delay that would be occasioned by our rejection of this appeal. Therefore, we have determined that we should, and hereby do, grant an interlocutory appeal as to those issues properly preserved and raised before us. *See State ex rel. Parcel v. St. John*, 308 N.W.2d 8, 9–10 (Iowa 1981).

By granting an interlocutory appeal in this case, however, we do not mean to signify that such an appeal should ordinarily be sought prior to the juvenile court's disposition. When this case was appealed, there was room for uncertainty as to whether a bare adjudication order was interlocutory or final; thus, it may have been the better part of caution to appeal the adjudication immediately, rather than risking loss of the right to challenge it. *See Maricopa County*, 20 Ariz.App. at 571, 514 P.2d at 742. Under such circumstances, "the interests of justice" referred to in rule 2(a) may be better served by granting an interlocutory appeal than by rejecting it. However, now that we have made it clear to the bench and bar that an order of adjudication alone is not a final order, we shall be extremely reluctant

hereafter to grant an interlocutory appeal from such an order.

■ One additional matter requires some comment. At the time of oral submission of this case, the record was supplemented to show that on December 2, 1980, the juvenile court entered a dispositional order. That order placed Melva in the legal custody of the Polk County Department of Social Services for the purpose of foster care placement. Because an interlocutory appeal, such as this one, is perfected only when permission to appeal is granted, we are satisfied that the juvenile court retained jurisdiction to proceed with matters not involved in this appeal, including the dispositional hearing and rendering of a dispositional order. *See Koss v. City of Cedar Rapids*, 300 N.W.2d 153, 155–56 (Iowa 1981). Of course, the proceedings had in the juvenile court pending disposition of the appeal would be subject to being set aside if they were inconsistent with the ultimate decision of this court. *Id.* at 156.

III.  *Admission of exhibits.*

The admission into evidence at the adjudication hearing of five separate exhibits is challenged by the mother, Denise. We will examine the objections to each and the propriety of the juvenile court's rulings.

A.  *Exhibit 1—Polk County Department of Social Services report to juvenile court.* The record reflects that this exhibit is a copy of the report which was prepared by the case manager. The case manager testified to the preparation and sources from which the report was compiled, and that the copy offered by the State bore her handwritten corrections. Denise objected that the exhibit was not the best evidence, that it contained double hearsay and that her rights to confrontation and due process were violated by its admission.

■ The best evidence rule has no application here. The facts to be proved were independent of any writing even though they were reduced to written form, *see Schiltz v. Cullen-Schiltz & Associates, Inc.*, 228 N.W.2d 10, 19–20 (Iowa 1975), and there

was no attempt by the State to establish the terms of the writing, *see Bahnsen v. Rabe*, 276 N.W.2d 413, 415 (Iowa 1979).

Denise's hearsay objection is of no avail to her in this proceeding. The legislature has mandated that in an adjudicatory hearing

[a] report, study, record, or other writing made by the department of social services, a juvenile probation officer, a peace officer or a hospital relating to a child in a [CHINA proceeding] shall be admissible notwithstanding any objection to hearsay statements contained therein provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian. The circumstances of the making of the report, study, record or other writing, including the maker's lack of personal knowledge, may be proved to affect its weight.

§ 232.96(6), The Code. Exhibit 1 is clearly to be classified as a department of social services report. The person who prepared the exhibit was closely cross-examined regarding the circumstances of the making of the report and the sources for the information contained in it. While the maker's dependence on other sources or lack of personal knowledge of matters reported may affect the weight to be given the report, this does not preclude its admission as hearsay, or even on the ground of multiple hearsay.

Because of her claimed lack of opportunity to confront and cross-examine those persons who provided adverse information concerning her to the case manager who prepared Exhibit 1, Denise asserts that she was denied the fundamental right of confrontation. She also asserts that the procedure which permits the admission into evidence of the purportedly double-hearsay statements contained in the case manager's report has resulted in the deprivation of her right of due process of law. We view these assertions as an indirect attack upon section 232.96(6), which allows the juvenile court to receive evidence containing hearsay statements subject to enumerated conditions.

■ We observe that the right of confrontation is derived from the sixth amendment, which applies to criminal or quasi-criminal proceedings. A CHINA proceeding is neither criminal nor penal in character; rather, it is a special proceeding, the objective of which is to determine the child's best interest and welfare. *See In re Delaney*, 185 N.W.2d 726, 728 (Iowa 1971). Nevertheless, because a CHINA proceeding may be the first step toward a termination of fundamental parental rights, *In Interest of Wall*, 295 N.W.2d 455, 458 (Iowa 1980), we will proceed on the assumption that confrontation rights are applicable to such a proceeding.

The hearsay rule is a well established rule of evidence. Nonetheless, "[t]he legislature can alter the customary rules of evidence as long as such change does not violate any fundamental rights." *Harter v. State*, 260 Iowa 605, 616, 149 N.W.2d 827, 834 (1967). Our task here is to determine whether the application of subsection 232.96(6) to the facts and circumstances in this juvenile proceeding abridged any of Denise's fundamental rights.

This court has previously spoken to similar challenges directed at the forerunners of subsection 232.96(6), and in those instances, the court found no merit in the challenges. *See Delaney*, 185 N.W.2d 726; *Orcutt v. State*, 173 N.W.2d 66, 72–75 (Iowa 1969); *Harter*, 260 Iowa 605, 149 N.W.2d 827. While the statutory language at issue in those earlier cases was somewhat different from that in the current statute, we believe the principles enunciated in those cases still apply and control the result here.

*Harter* dealt with section 232.46, The Code 1966; nearly identical language in section 232.31, The Code 1966, as amended, 62 G.A., ch. 203, § 5 (1967), was at issue in *Orcutt* and *Delaney*. Those sections permitted the juvenile court to admit and rely upon to the extent of its probative value relevant and material information of any nature, including that contained in reports, studies or examinations. They further provided: "When information contained in a

report, study, or examination is admitted in evidence, the person making such a report, study, or examination shall be subject to both direct and cross-examination when reasonably available."

The precept that emerges from the decisions in *Delaney, Orcutt* and *Harter* is that where the purpose of confrontation is secured, that is, an opportunity for cross-examination, the right of confrontation is not violated. That right was found to be secured under former sections 232.31 and 232.46, and we find it remains secure in the present law through the opportunity to show "[t]he circumstances of the making of the report, study, record or other writing, including the maker's lack of personal knowledge . . . ." § 232.96(6). *Cf.* §§ 232.31, .46, The Code 1966 (pertinent text set forth above). This right is facilitated not only by the right to examine the maker of a written document, but also by the statutory right to demand issuance of subpoenas requiring the attendance and testimony of witnesses and production of papers. § 232.88, The Code (incorporating pertinent provisions of § 232.37(3), The Code). This affords a party, such as Denise, the right and opportunity to subpoena any witness for examination or cross-examination, whether that person be the maker of a written document or one who has given information to the maker.

Coupled with the right of subpoena is the unrestricted statutory right of a parent, guardian or custodian to inspect and have disclosed the contents of pertinent juvenile court records. § 232.147(3)(c), The Code. When exercised, this right provides ample opportunity to gain information which will aid in preparing for hearing. Such records should reveal the evidence and the names of persons whose reports or statements are relied on by the State to prove its case. Inspection of these records will afford both a basis for readiness for cross-examining witnesses and for determining the witnesses to be called to rebut the State's evidence or to support the contentions of the parent, guardian or custodian.

Hence, the means for confrontation are available to a parent, guardian or custodian in a CHINA action, and we are thus satisfied that the opportunity for confrontation is preserved. What this court earlier observed in *Harter* remains true today: "The provisions of chapter 232 seek to retain the advantages of an informal hearing in juvenile court while providing safeguards which will guarantee each party his or her fundamental rights to a fair hearing." *Harter,* 260 Iowa at 616–17, 149 N.W.2d at 834.

■ In this case, although the social services report was available to Denise before the adjudicatory hearing, she did not exercise her right to subpoena any of the third parties whose statements were included in the report and who were not otherwise called as witnesses by the State. She therefore cannot complain that her confrontation rights were denied by the admission of the report.

Finally, we are unable to agree with Denise that admitting what she asserts to be double hearsay from the exhibit in question is *per se* a denial of due process. Her contention overlooks the statutory conditions under which hearsay evidence can be admitted. It must be relevant and material; its probative value must substantially outweigh the danger of unfair prejudice; the conveyor's lack of personal knowledge may be proved to affect its weight. *See* § 232.96(6). Such evidence, which under ordinary rules of evidence would be excluded as hearsay, is made admissible by statute in a juvenile proceeding, leaving the nature of the evidence to be considered as it affects its probative value rather than its admissibility. Stated otherwise, objections to such evidence are to be considered in relation to the weight to be given the evidence rather than its admissibility. *See Harter,* 260 Iowa at 608, 149 N.W.2d at 829. This is a process of sifting the evidence akin to that employed in equity cases. *Id.* We believe that procedural due process is flexible enough to sanction this sifting process, wherein we rely on the juvenile court judges to discern probative value absent the

safeguards provided by the hearsay rule.[2] *See Alsager v. District Court,* 406 F.Supp. 10, 24 (S.D. Iowa 1975), *aff'd per curiam on other grounds,* 545 F.2d 1137 (8th Cir. 1976).

■ B. *Exhibit 2—Police officer's report also containing a transcript of the interrogation of a witness.* The near-drowning in a bathtub of another of Denise's children, seven-month-old David, at a time material to this proceeding, was investigated by the Des Moines Police Department. A report of that investigation was made by police officer Harris. The report included a transcript of a question-and-answer statement taken by Harris from a witness named Wright. Officer Harris was called as a State's witness, testified to the circumstances of his investigation, the preparation of the report, his interrogation of Wright and the accuracy of the report copy offered in evidence as a reproduction of his original report. We note that in addition to cross-examining Harris, Denise's attorney called Wright as a witness for Denise.

Multiple objections were lodged against the admission of Exhibit 2. Those objections were the same as the objections made on the offer of Exhibit 1 but with the additional ground that the police report contained opinions of law and fact.

■ Initially, we note that the latter ground presents nothing for review. Opinion evidence is not inadmissible on that ground alone; some specific defect or reason for its exclusion must be called to the court's attention. *See In re Marriage of Boyd,* 200 N.W.2d 845, 850 (Iowa 1972). This was not done here.

Next, we observe that Exhibit 2 is a peace officer's report within the scope of section 232.96(6), and for the reasons explained in concluding that Exhibit 1 was properly admitted, we hold that Exhibit 2 was likewise properly admitted.

■ Lastly, although Denise's attorney asserted in oral argument that the police report was not available to him before the adjudicatory hearing, he did not raise this objection in the juvenile court; therefore, it is waived. *See, e.g., In Interest of Voeltz,* 271 N.W.2d 719, 722 (Iowa 1978).

■ C. *Exhibit 5—Child abuse report.* Denise contests the admission into evidence of a Department of Social Services child abuse report, identified as Exhibit 5. The person who prepared that report was not produced as a witness. A familiar series of objections was made to the offer of Exhibit 5, largely the same as those advanced against the admission of Exhibits 1 and 2. In this series, however, the contention that it contained conclusions of law replaced the opinion evidence ground. We find no merit in any ground urged, again for the reasons already discussed regarding the admission of Exhibit 1. We will, however, comment further on the ground that Exhibit 5 contained conclusions of law.

The making of a child abuse report like Exhibit 5 is mandated by section 232.71, The Code. That section commands that the Department of Social Services, upon receiving a report of suspected child abuse, promptly commence an appropriate investigation and seek to identify the nature, extent and cause of the child's injuries, the person or persons responsible, and the condition of other children in the same home. The report is also to include an evaluation of the home environment. *See* § 232.71(1), (2). That Code section further provides for the preparation and transmittal of reports of such an investigation and evaluation to the juvenile court, the registry for child abuse information established by chapter 235A, The Code, and the appropriate county attorney. *See* § 232.71(5)–(7). The evaluation mandated by this statute requires, by its nature, the inclusion of conclusions and opinions.

Any conclusions or opinions contained in a child abuse report may be accepted or rejected by the juvenile court, depending upon the foundation laid for the conclusions

**2.** Juvenile court judges' decisions, of course, are subject to appellate scrutiny de novo. *See* Division V *infra.*

or opinions and the qualifications of the person recording them. Once again, this requires the juvenile court to sort through such a report to determine the probative value and weight, if any, to be given to its contents.

We also observe that Denise did not ask that the maker of Exhibit 5 be subpoenaed for examination, nor did she require that any of the persons who provided information contained in the child abuse report be summoned as witnesses, both of which she had the right to do.

**■ D. Exhibit A—Nursing records of home visits.** Exhibit A was placed in evidence through the child, Melva's, attorney and guardian ad litem. The exhibit is essentially a log containing entries of nurses of the Public Health Nursing Association recording their visits, observations and services in Denise's home over a period beginning in 1979 and continuing into June 1980. The nurse who was primarily involved in those services testified to the method of compiling the record and to the fact that it was made in the regular course of conducting the nursing services provided to that home.

The juvenile court admitted Exhibit A under authority of section 622.28, The Code, which codifies the exception to the hearsay rule for regularly kept records. *See State v. Fingert*, 298 N.W.2d 249, 251–54 (Iowa 1980). On appeal, Denise does not contend there was any foundational deficiency in the admission of the exhibit. She instead argues that the objections to the admission of Exhibit 1 are equally applicable to Exhibit A. We disagree, and conclude that the juvenile court acted within its discretion in receiving Exhibit A.

**■ E. Exhibit C—Report of Dr. Taraska.** Melva's attorney and guardian ad litem called as a witness Dr. Stanley P. Taraska, M.D., director of the pediatric residency program at Iowa Methodist Medical Center. His testimony covered medical attention he had given Melva and her sister and brother at Iowa Methodist Medical Center, and also his contact with and obser-

vations of Denise. Exhibit C is the doctor's written report of the matters to which he testified. In her brief, Denise reminds us that the objections she made to the admission of Exhibit 1 were repeated on the offer of this exhibit, and she asks that we consider the authorities she previously cited in support of those objections. In addition, she specifically argues that the hearsay exception of section 232.96(6) does not apply to this exhibit "since Dr. Taraska is neither a 'juvenile probation officer, a peace officer or a hospital.'"

As previously mentioned, Dr. Taraska is the director of pediatric education of the hospital facility where he attended Melva and her siblings, and his report was made under the hospital's letterhead whereon his name was also printed. We are satisfied that Dr. Taraska's report is a report of a hospital within the ambit of section 232.-96(6). For this reason, and for reasons explained in response to objections made to Exhibit 1, we find no merit in any of Denise's objections to the admission of Exhibit C.

**IV. Admission of expert testimony.**

**■** Denise further complains of the juvenile court's receiving the testimony of three expert witnesses. Those witnesses— Victoria Bruner, a registered nurse and child and family therapist, Dr. Donner Dewdney, a child and adolescent psychiatrist, and Dr. Taraska, whose credentials were earlier stated—each had a direct role in treating or evaluating Denise and her children. A barrage of objections was repeatedly made to questions asked the expert witnesses, namely, that such evidence lacked relevancy and sufficient foundation, was based on hearsay, was not the proper subject of expert testimony and violated Denise's right to due process.

We believe that it is unnecessary at this juncture to relate in detail the qualifications and testimony of the three expert witnesses. Their testimony will come under further scrutiny when we review the record as a whole to determine whether the State's evidence meets the requisite standard of

proof to support the juvenile court's findings. We then, as the trier de novo, are free to accept or reject their opinions. For now, suffice it to say that we are satisfied that the juvenile court did not abuse its discretion in admitting the testimony of those experts.

The evidence offered through the experts had probative value. Moreover, this court has long been committed to a liberal rule on the admission of opinion testimony and has accorded trial judges wide discretion in their rulings on such evidentiary matters. Principles governing the receipt of opinion evidence have been delineated in numerous decisions of this court, see, e.g., In Interest of O'Neal, 303 N.W.2d 414, 420–21 (Iowa 1981); Ganrud v. Smith, 206 N.W.2d 311, 314–15 (Iowa 1973), and need not be repeated here. Furthermore, there was no denial of procedural due process to Denise in permitting the testimony of the State's experts to be considered by the trier of fact. Thus, we find no merit in any of Denise's objections.

V. *Sufficiency of evidence.*

The State bears the burden of proving "by clear and convincing evidence," § 232.-96(2), The Code, that Melva is a child in need of assistance. Denise contends that the State has failed to do so.

■ As stated at the outset of this opinion, the juvenile court adjudged Melva to be a child in need of assistance within the meaning of section 232.2(5)(c)(2), The Code, in that she suffered or was imminently likely to suffer harmful effects as a result of Denise's failure to exercise a reasonable degree of care in supervising Melva. Our task is to determine by de novo review, In Interest of Driver, 311 N.W.2d 87, 88 (Iowa 1981), whether the evidence is sufficient to establish the ground alleged in the CHINA petition.

At the time of the adjudication hearing in the fall of 1980, Denise was twenty-six years old, the natural mother of four children, unmarried, unemployed, lacking a high school diploma, financially supported by public assistance programs, and the recipient of homemaker, family counselor and public health nurse services. Until June 1980, her three younger children had been living with her: Melva, the subject of this proceeding who had just reached six years of age; Eugenia, age three; and seven-month-old David. Also residing with Denise was Tammy Agee, an unrelated teenager.

The record reflects that on November 20, 1979, Eugenia was admitted to Iowa Methodist Medical Center with second and third degree burns of both lower extremities. The burns were determined to have been caused by hot water. Bruises on Eugenia's buttocks, right abdomen, neck and head were observed. Two days after admission, Eugenia developed a perforation of her small bowel, most likely resulting from a blow. The perforation was repaired surgically. During her hospitalization, Eugenia was also required to undergo skin grafting.

Eugenia was hospitalized until March 1980. In the meantime, she was adjudicated a child in need of assistance. On being released from the hospital, however, she was returned to Denise's custody subject to supervision of the Polk County Department of Social Services and a probation officer of the juvenile court.

On June 15, 1980, seven-month-old David was brought to the same medical center with cardiopulmonary arrest, secondary to a near-drowning episode. The near-drowning occurred at Denise's apartment after David had been left unsupervised to bathe with Melva. At the time of hearing, David remained hospitalized in the intensive care unit. He was in a deep coma, and it was deemed unlikely that he would ever come out of it. If he should, however, the medical prognosis was that he would be severely retarded mentally.

The incidents just related, coupled with the experience of those providing supervision and services to Denise, precipitated the filing of the petition alleging Melva to be in need of assistance.

Several witnesses called by the State related their observations of conditions and

relationships in Denise's household. Drawing only upon evidence of their first-hand observations, we find a pattern of neglect in that Melva lacked adequate supervision by Denise. Melva and her younger siblings were often unattended while Denise slept or was away. This also resulted in much responsibility being thrust upon Melva for the care of the others. Meals were irregular, and often lacking in nutritional value. Frequently, it was left to Melva to find food for the others. In addition, the emotional interaction between Denise and Melva is described as lacking any awareness of affection.

Neglect in supervision is also self-evident from the fact that Denise frequently left Melva in Tammy Agee's care. *See In Interest of Driver*, 311 N.W.2d at 89. Witnesses observed Tammy screaming at Melva and striking and kicking her. Tammy was verbally abusive to Melva; she was also responsible for cigarette burns on Melva's calf and foot. Denise had acknowledged to one witness that Tammy's behavior placed her children in "jeopardy," yet she took no remedial measures.

We next take into account certain evidence presented by the State through two previously mentioned expert witnesses. The first of these, Ms. Bruner, was retained by the Polk County Department of Social Services to counsel with both Eugenia and Melva. This, of course, also brought her into contact with Denise.

Ms. Bruner currently practices as a child and family therapist. She holds degrees in nursing and in early childhood education and psychology; she has an advanced degree in social work. Ms. Bruner has published articles dealing with child development, family therapy, and child abuse and neglect. Previously she engaged in psychiatric nursing for severely disturbed children and their families.

Based upon consultation and testing of Melva, Ms. Bruner offered the opinion that Melva is suffering as a "parental child." This characterization is attributed to a child who is responsible for family organizational and parenting functions unfulfilled by a parent. The harmful effect of this, according to Ms. Bruner, is that the child risks giving up her childhood and retarding her own development. Under conditions observed to be existent in the Long household, Ms. Bruner said she believed that harm to Melva as a "parental child" existed both in present and future terms.

From consultation and observations, it was also Ms. Bruner's opinion that Melva suffers from guilt for her perceived complicity in the near-drowning of her brother. Ms. Bruner stated that a child of Melva's age who experiences such a traumatic event "rarely escapes ... without some kind of residual psychological harm." She also observed that Melva had begun to exhibit some behavioral problems which may have been a result of her guilt feelings.

Finally, Ms. Bruner stated that based upon her observations of conditions and occurrences in the Long household and her expertise as a child and family therapist, the risk of harm to Melva from future lack of supervision by Denise was great.

Evidence of a psychological and psychiatric nature was provided by Dr. Dewdney. Prior to commencing his practice of child and adolescent psychiatry, Dr. Dewdney received training at and later served on the faculty of the Menninger Foundation. Dr. Dewdney's psychiatric training followed the receipt of his medical degree, an internship and a residency in internal medicine.

Dr. Dewdney's initial involvement with this family was related to psychological problems encountered by Eugenia because of her severe burn experience. His subsequent psychiatric evaluations of Melva and also Denise were accomplished pursuant to juvenile court order.

Briefly summarizing his testimony, we observe that Dr. Dewdney concurred in the labeling of Melva as a "parental child"; he similarly testified to the present and continuing harmful effects to Melva of this phenomenon if she remained in the same family environment under the same conditions that had existed in the past. He also confirmed Melva's problem of dealing with

guilt because of her role in David's accident. In addition, from his consultation with Denise, Dr. Dewdney discerned no awareness on her part of the circumstances or events which led to tragic consequences for two of her children and also to Melva's present state; nor did he foresee anything to cause him to believe that environmental conditions would be or could be corrected by Denise so as to establish a family environment in which Melva could live without further emotional harm, or even in physical security. It was Dr. Dewdney's opinion that Melva should not be returned to Denise's care until Denise is able to comprehend why such traumatic events have happened in her family and she gains the ability to supervise the care of her children.

Lastly, we take limited note of the testimony of Dr. Taraska, who, as earlier indicated, was called by Melva's attorney and guardian ad litem. Dr. Taraska's medical background includes pediatric training and a fellowship at the Mayo Clinic in infectious diseases.

Dr. Taraska treated Eugenia during the months of her hospitalization and subsequently as an outpatient. He also attended David and has followed his hospitalization. Dr. Taraska treated Melva only for ringworm infecting her scalp. As a result of the foregoing, he also had numerous contacts with Denise.

We accept Dr. Taraska's testimony of his diagnoses, treatment and prognoses of the conditions for which he attended each of the three children. We also give weight to Dr. Taraska's testimony relating to Denise's failure to give Eugenia proper post-hospitalization care. According to Dr. Taraska, this included what he deemed to be poor nutritional provision, poor hygienic care, poor cooperation in performing rehabilitative exercises and inadequate treatment of skin and open burn wounds. Such evidence bears upon Denise's lack of care in supervising her children, and is thus relevant to the issue here. We accord no weight to other opinion evidence given by Dr. Taraska.

Without elaborating further upon the extensive record before us, we have no diffi-culty in concluding that Melva has suffered harmful effects as a result of Denise's failure to exercise a reasonable degree of care in supervising Melva. The evidence upon which we base our determination is clear and convincing. Melva is a child in need of assistance.

AFFIRMED.