**IN THE COURT OF APPEALS OF IOWA**

No. 18-0641
Filed June 20, 2018

**IN THE INTEREST OF J.D. and B.D.,**
**Minor Children,**

**T.D., Mother,**
          Appellant.

---

Appeal from the Iowa District Court for Monona County, Timothy T. Jarman (adjudication) and Mark C. Cord (disposition), District Associate Judges.

A mother appeals a juvenile court order adjudicating her children to be children in need of assistance and the subsequent dispositional order. **REVERSED AND REMANDED.**

Zachary S. Hindman of Mayne, Arnseon, Hindman, Hisey & Daane, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Marchelle M. Denker of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals a juvenile court order adjudicating her children to be children in need of assistance (CINA) and the subsequent dispositional order.[1] She contends the CINA adjudication is unsupported by clear and convincing evidence or, alternatively, the juvenile court erred in declining to return the children to the parents' care at the time of disposition.

## I.      Background Facts and Proceedings

The following facts can be gleaned from the adjudication record.   The children in interest, B.D. and J.D., were born in 2004 and 2005, respectively.   The parental rights of the children's biological parents were terminated in 2007, after which the children were adopted by their paternal grandparents.[2]  B.D. has been diagnosed with autism and ADHD and has a history of self-harming behavior.  Both children regularly attend therapy.  The mother is sixty-one years old and the father is sixty-two.  The father is diabetic and has heart issues.  The mother is "delicate diabetic" and has high blood pressure; COPD, which requires her to be on oxygen "24/7"; and a host of other health issues.  The parents do not work, but they receive disability benefits.

In May 2016, B.D. reported to a friend through social media that the father physically and sexually assaulted her, but the child later retracted these allegations during an interview with a child protective worker from the Iowa Department of Human Services (DHS).   In a subsequent interview at a child advocacy center,

---

[1] *See In re Long*, 313 N.W.2d 473, 476–77 (Iowa 1981) (indicating the proper procedure to challenge adjudication is to appeal from the dispositional order following adjudication).
[2] This opinion will refer to the adoptive parents as mother, father, and parents.  The biological father will be referred to as T.D.

B.D. denied any inappropriate touching occurred. J.D. reported the father has hit her in the past but similarly denied she was ever the subject of any inappropriate touching. DHS determined the allegations to be "not confirmed" and concluded the children could be safely returned to the parents' care.

In early September 2017, DHS received allegations that B.D. reported the father recently "put his hands down her pants and touched her privates." B.D. consistently related this allegation to law enforcement, a school nurse, a DHS worker, and during an interview at a child advocacy center. Both parents denied the allegation. J.D. denied the veracity of B.D.'s allegations during her interviews with DHS and the child advocacy center. Law enforcement became involved in the case, but the adjudication record is devoid of any indication that criminal charges were pursued against the father. DHS determined the children could not be safely returned to the home, and an emergency removal order was entered by the juvenile court placing the children in the care, custody, and control of DHS for suitable placement. The children were placed with T.D. and his wife.[3]

The State filed petitions alleging the children were CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (d) (2017).[4] An adjudication hearing was held in October and December. In its subsequent adjudication ruling, the juvenile court

---

[3] T.D. has attained sobriety since the termination of his parental rights to his children. He has reestablished his relationship with the children over the last several years, and the children regularly stay with him and his wife on the weekends.

[4] Section 232.2(6)(c)(2) defines a CINA as an unmarried child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." Section 232.2(6)(d) defines a CINA as an unmarried child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides."

noted its "serious concerns and a degree of doubt related to the alleged sexual assault" and concluded "the State failed to prove the assault by clear and convincing evidence." The court therefore declined to adjudicate the children CINA pursuant to section 232.2(6)(d).

However, the court concluded the children "are 'imminently likely' to suffer harmful effects because of a determination that their adoptive parents have failed and are likely to continue to fail to exercise a reasonable degree of care in supervising the children." The court reasoned the parents:

> have serious medical conditions that negatively impact . . . their ability to properly supervise children the ages of [the children in interest]. [The mother] in particular has a litany of serious medical problems. During the course of the hearing, an extended break was needed to allow her to leave the courthouse to obtain her oxygen supply that she had failed to bring to court. The court noted the behavior of both [parents] during the course of the hearing. They often seemed confused and, from time to time, had trouble properly controlling themselves at the counsel table in the courtroom while the hearing was in progress.
>    The court also notes that the mere fact of the sexual assault allegation by [B.D.], even if not true, indicates a serious problem in the relationship between the children and at least one, if not both, of their adoptive parents. [B.D.] has a history of self-harm. Both of the girls are in therapy. [J.D.] states that [B.D.] spends much time on the cell phone, social media, and other means of modern communication between teenagers. Although they tried to block a Facebook access that enabled the girls to communicate with their natural mother, these technologies appear to be largely beyond [the parents] which means they are not capable of properly supervising their use by the girls.

The court adjudicated the children to be CINA pursuant to section 232.2(6)(c)(2) and continued removal.

A dispositional hearing was held in March 2018, in which the mother requested the children be returned to the parental home. In its dispositional order, the juvenile court continued removal. As noted, the mother appeals.

**II.    Standard of Review**

"We review CINA proceedings de novo."  *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (quoting *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014)).  We give weight to the factual findings of the juvenile court, but we are not bound by them.  *Id.*  Our principal concern is the best interests of the children.  *Id.*

**III.    Discussion**

The mother contends clear and convincing evidence does not support the CINA adjudication pursuant to section 232.2(6)(c)(2), the juvenile court's sole ground for adjudication.  A CINA adjudication must be supported by clear and convincing evidence; the burden of proof rests on the State.  *See* Iowa Code § 232.96(2), (8), (9); *L.H.*, 904 N.W.2d at 149.  "'Clear and convincing evidence' exists 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'"  *L.H.*, 904 N.W.2d at 149 (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

The juvenile court's CINA adjudication rested solely on Iowa Code section 232.2(6)(c)(2), which requires a showing by clear and convincing evidence that a child "has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child."  We acknowledge that the phrase "imminently likely" is to be liberally interpreted and "[c]hild protection statutes 'are designed to prevent probable harm to the child and do not require delay until after harm has occurred.'"  *Id.* at 150 (alteration in original) (quoting *J.S.*, 846 N.W.2d at 43).

As noted, the juvenile court concluded the children are imminently likely to suffer harmful effects because the parents have failed and are likely to continue to fail to exercise a reasonable degree of care in supervising the children. The court reasoned the parents' medical conditions "negatively impact on their ability to properly supervise" these children and the parents' "confused" demeanors at the adjudication hearings was further support of this conclusion. Although the parents do have medical conditions, the record is clear that both parents have been subject to these conditions for some time. Absolutely no evidence, let alone clear and convincing evidence, was presented to support a finding that the parents' conditions have or could potentially render them unable to exercise a reasonable degree of care in supervising the children. There has been little, if any, concern about the parents' ability to supervise these children. The thrust of the State's petitions was the sexual-abuse allegation,[5] and the pursuit of adjudication under the lack-of-supervision alternative appears to flow solely from the mother's refusal to believe the father sexually abused the child.

The juvenile court also based its adjudication on a perceived "problem in the relationship" between the children and one or both of the parents. Parent-child

---

[5] The State's petitions for each child stated, "a clear and concise summary of the facts which bring this child within the jurisdiction of the Court is filed herewith, marked 'State's Exhibit 001', and hereby incorporated herein." Said exhibit contains a heading "Substance of the Petition," which states in its entirety:

> On 9/2/17 the [DHS] received allegations that [B.D.] reported that [the father] put his hands down her pants and touched her privates this summer. She reported this to law enforcement, the school nurse, this worker and again at the Child Advocacy Center. [B.D.] has been very consistent that [the father] touched her privates. [The father] adamantly denies this is the truth. [The mother] does not believe this occurred and would not be able to assure her safety in the home. This worker does not believe that [B.D.] or [J.D.] can safely return to [the parents'] care as they may be subjected to further abuse.

relationships are often times naturally problematic, but this has no bearing on these parents' ability to properly supervise these children. Finally, the juvenile court concluded the parents' inability to effectively monitor the children's social media activity resulted in the children having contact with their biological mother, which supported a finding the parents "are not capable of properly supervising" the children. However, the record reveals the contact was instigated by the biological mother, and the parents took repeated measures to cut off that contact.

Upon our de novo review, we conclude adjudication pursuant to section 232.2(6)(c)(2) was not supported by clear and convincing evidence. As such, we reverse the adjudication and remand for dismissal of the State's petition. Our disposition renders our consideration of the mother's alternative challenge to the juvenile court's dispositional order unnecessary.

**REVERSED AND REMANDED.**