# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0657
Filed April 29, 2026

————————————

**In the Interest of J.H., Minor Child,**

**J.H., Minor Child,**
Appellant.

————————————

Appeal from the Iowa District Court for Greene County,
The Honorable Joseph McCarville, Judge.

————————————

**AFFIRMED**

————————————

Jonathan Law of Mumma & Pedersen, Jefferson, attorney and guardian ad litem for appellant minor child.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, attorneys for appellee State.

————————————

Considered without oral argument
by Tabor, C.J., Langholz, J., and Vogel, S.J.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A sixteen-year-old juvenile attacked her ex-boyfriend, repeatedly hitting his face with a full can of hard iced tea. The victim—also a minor—suffered a broken jaw that was wired shut for nearly three months. After a hearing, the juvenile was adjudicated to have committed a delinquent act that would have been willful injury resulting in serious injury if she were an adult. *See* Iowa Code §§ 232.2(13)(a), 708.4(1) (2024). And the juvenile court ordered the juvenile to pay restitution totaling $19,131.50 to the victim and his family. The juvenile appeals the restitution order arguing that it "lack[s] substantial evidentiary support." Because substantial evidence supports the court's findings, we affirm the restitution order.

## I. Appellate Jurisdiction and Form of Review

Before considering the merits, we address the State's challenges to our jurisdiction over this appeal. First, the State contends that the juvenile failed to file a notice of appeal of the restitution order that she now challenges. We disagree. The restitution order was entered on March 18, 2025, thirty-five minutes after the court entered the disposition order. *See* Iowa Code § 232.52(3)(a) (authorizing a restitution order to "be the sole disposition or . . . included as an element in other dispositional orders" in a juvenile delinquency proceeding). Thirty days later, the juvenile filed a timely notice of appeal specifying that she appeals "from the final order entered in this case on the 18th day of March 2025, and from all adverse rulings and orders inhering therein." The restitution order meets that description—it is a final order entered on the specified date. It matters not, as the State highlights, that the disposition order could also meet that description because the juvenile does not challenge any aspect of that order. The juvenile only tries

to challenge a single order that matches the description specified in the notice of appeal that she filed. She properly appealed the restitution order.

Second, the State argues that the juvenile has no right to appeal from a restitution order and was required to petition for a writ of certiorari. The State relies on statutes governing appeals from criminal sentences and review of criminal restitution orders. *See* Iowa Code § 814.6(1)(a) (granting "[r]ight of appeal . . . from . . . [a] final judgment of sentence"); *id.* § 910.7(5) ("Appellate review of a district court ruling under this section [providing for district court hearings on restitution during a defendant's probation, parole, or incarceration] shall be by writ of certiorari."); *id.* § 910.3(10) ("A permanent restitution order entered after the time of sentencing shall only be challenged pursuant to section 910.7."). But these statutes do not govern appeals from juvenile delinquency proceedings which, while analogous in many ways, are legally distinct from criminal proceedings.[1]

The right to appeal final orders in a juvenile delinquency proceeding is granted by Iowa Code section 232.133(1), which provides: "An interested party aggrieved by an order or decree of the juvenile court may appeal from the court for review of questions of law or fact." *See In re J.J.A.*, 580 N.W.2d 731, 734–36 (Iowa 1998) (interpreting section 232.133(1) to decide whether entry of a consent decree in a juvenile delinquency proceeding is

---

[1] Nothing in the text of sections 910.3 or 910.7 says that they apply to dispositional orders requiring a juvenile to pay restitution under Iowa Code section 232.52(2)(a)(2). Neither does section 232.52(2)(a)(2) say that it is subject to the restitution procedures established for criminal cases in chapter 910. And section 232.52(3)(a) suggests the opposite—that a juvenile restitution order is a juvenile dispositional order governed by chapter 232 the same as any dispositional order. *See* Iowa Code § 232.52(3)(a) ("An order under subsection 2, paragraph 'a', may be the sole disposition or may be included as an element in other dispositional orders.").

appealable as a matter of right and reaffirming that "appealability depends on whether the juvenile court order is found to be final" rather than interlocutory (cleaned up)); Iowa R. App. P. 6.103(1) (defining "final orders and judgments," with exceptions not relevant here, as all those "involving the merits or materially affecting the final decision"). The statute expressly carves out *some* juvenile delinquency orders—those "adjudicating a child to have committed a delinquent act"—as being unappealable "until the court enters a corresponding dispositional order." Iowa Code § 232.133(1). But the restitution order here is not such an unappealable adjudicatory order.

This restitution order—entered thirty-five minutes after the main disposition order—is final rather than interlocutory. It finally resolves the merits of the juvenile's payment obligation to the victim and his family. *Cf. J.J.A.*, 580 N.W.2d at 734–36 (holding that entry of a consent decree in juvenile delinquency proceeding was not final); *In re W.D. III*, 562 N.W.2d 183, 186 (Iowa 1997) (holding that an order directing filing of termination petition in child-in-need-of-assistance proceeding was not final because it "did not dispose of all the issues in [the] case, and it did not conclusively adjudicate the rights of the parties"). After its entry, the order could be enforced. And nothing in the order suggested further court action was needed to finalize the issue. *Cf. In re Long*, 313 N.W.2d 473, 476–77 (Iowa 1981) (reasoning that mention of another hearing weighs against finality because "[a] ruling is not final when the trial court intends to do something further to signify its final adjudication of the case," including "[w]hen a ruling specifically provides for subsequent entry of a final order" (cleaned up)). Indeed, the order itself warned in bold print: "Any party who wishes to appeal from this order must file a notice of appeal pursuant to Iowa Rules of Appellate Procedure. Failure to comply with the time deadlines will result in the loss of the right to appeal and the dismissal of an appeal."

4

The juvenile properly sought review of the order by appeal rather than certiorari.[2] We thus have appellate jurisdiction.

## II.  Substantial Evidence for the Restitution Award

After adjudicating a juvenile to have committed a delinquent act, the court may enter a dispositional order "prescribing," among other things, "[r]estitution consisting of monetary payment or a work assignment of value to the victim." Iowa Code § 232.52(2)(a)(2). In sync with that authority, victims are separately granted "the right to recover pecuniary damages, as defined in section 910.1," and that right "includes" that "[a] judge may require a juvenile who has been found to have committed a delinquent act to compensate the victim of that act for losses due to the act." Iowa Code § 915.100(1), (2)(b). We thus look to the definition of "victim" and "restitution" in section 910.1 to review a restitution order in a juvenile delinquency proceeding. *See In re D.R.*, No. 21-0276, 2022 WL 2826008, at *1 (Iowa Ct. App. July 20, 2022).

Under section 910.1, a victim is defined broadly—with some wrinkles related to insurers not applicable here—as "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(11). And restitution is also defined to include "pecuniary damages," which as relevant here "means all damages . . . which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." *Id.* § 910.1(6), (10).

---

[2] Even if this order were not final, we are uncertain that certiorari would be the alternative. The supreme court previously granted discretionary review under Iowa Rule of Appellate Procedure 6.106 of a restitution order entered in a nonfinal consent decree. *See In re D.T.*, No. 22-0088, 2023 WL 3089874, at *2 (Iowa Ct. App. Apr. 26, 2023).

Although we generally review juvenile delinquency proceedings de novo, the parties agree—consistent with many unpublished decisions of our court—that we review a restitution order in a delinquency proceeding for corrections of errors at law. *See In re J.S.*, No. 13-0174, 2013 WL 5291959, at *1 (Iowa Ct. App. Sep. 18, 2013); *see also, e.g.*, *D.R.*, 2022 WL 2826008, at *1; *In re N.H.*, No. 21-1111, 2022 WL 244863, at *2 (Iowa Ct. App. Jan. 27, 2022); *In re T.L.*, No. 19-0770, 2020 WL 1879587, at *2 (Iowa Ct. App. Apr. 15, 2020). Under that standard of review, "[w]e will affirm unless the court's findings lack substantial evidentiary support or the court has not properly applied the law." *T.L.*, 2020 WL 1879587, at *1 (cleaned up). And "[e]vidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (cleaned up).

Here, the State submitted a statement claiming $27,431.48 in pecuniary damages, a supporting spreadsheet prepared by the victim's mother, and the testimony of the victim's mother explaining the claim. That amount included $17,100 for the minor victim—$9,600 in lost wages for his twelve weeks off work and $7,500 for his lost hay crop.[3] It also included $7,201.94 for the victim's mother for her expenses, including airfare and lost wages (the mother had used up her paid time off), for three multi-day visits from her home in Texas back to Iowa where the victim lived—two of which were around the victim's surgeries.[4] And it included $3,129.54 for the victim's grandmother for lost wages and mileage for driving the victim to

---

[3] The lost wages were calculated at $20 per hour for forty hours per week. The hay-crop loss for one cutting on fifteen acres was calculated at $10 per hay bale for an estimated 750 bales.

[4] Each of the airfares varied and each stay was of different durations, so the calculated lost wages varied too. In total, the mother claimed $1,931.94 for airfare and $5,280 in lost wages, calculated at rates of $34 per hour and $51 per hour for overtime.

appointments and surgeries roughly an hour away in the Des Moines Area—both at times when the mother was back in Texas and when she was present for the surgeries.[5] The spreadsheet and the mother's testimony detailed how she calculated each of the amounts, including a full schedule of the appointments and surgeries. But she did not submit other supporting documentation, explaining under cross-examination that probed her lack of documentation that "my e-mail got hacked so I'm locked out until April 4th. I can get back into my e-mail and I'm willing to provide that to the Court."

The court ordered the juvenile to pay $19,131.50 in restitution—the victim's lost wages, all the amount claimed by his mother, and the grandmother's lost wages. It declined to award the lost-hay income claimed by the victim or the mileage claimed by the grandmother, reasoning:

> No evidence was presented regarding the net vs. gross income, nor did [the mother] testify regarding mitigation efforts, such as hiring a neighboring farm[er] to harvest the hay. The Court finds a $7,500 loss on fifteen acres of hay ground for one cutting excessive and unsubstantiated and therefore denies this claim of restitution. All the other restitution claims, while not well documented with time sheets and travel receipts, seem reasonable.

The juvenile does not challenge that a minor victim's lost wages or the lost wages and other expenses of a minor victim's parents or grandparents would all be appropriately recoverable in a restitution order in a case like this. Indeed, she concedes that we have already "held that costs incurred from lost wages by a parent's caretaking of a minor child can be recoverable in restitution orders." *N.H.*, 2022 WL 244863, at *3. But she argues that the restitution here is not supported by substantial evidence because it is not

---

[5] The damages claimed for the grandmother included $799.98 in mileage for six trips to West Des Moines for appointments and three trips to downtown Des Moines for surgeries. And it included $2,329.56 in lost wages, calculated at rates of $43.14 per hour for six five-hour trips for the appointments and three day-long trips for the surgeries.

supported by sufficient documentation of the lost wages or airfare costs. And she claims "it is not reasonable that [she] has been ordered to compensate both the mother and grandmother for time missed for" two of the victim's surgeries and some of his appointments, and "[n]o evidence was presented why it was necessary for both . . . [to] take time off from work to take [the victim] to those appointments/surgeries." We disagree.

The mother's sworn testimony and her detailed spreadsheet itemizing all the expenses and showing her work on the calculations was substantial evidence from which a reasonable factfinder could find that the victim, his mother, and his grandmother suffered the claimed pecuniary damages. Of course, the court could have decided not to believe the mother's testimony and spreadsheet summary without additional documentation. But on substantial-evidence review we will not second-guess the court's implicit credibility determination. And the level of detail—with specific numbers and explanations of the calculations, lends credibility that the figures were accurate and not merely estimates without a factual basis.[6]

The State argues that the juvenile's second argument—questioning the need for both the mother and grandmother to take time off work for some

---

[6] Unlike *State v. Jauregui*, No. 20-0629, 2021 WL 1663598, at *4 (Iowa Ct. App. Apr. 28, 2021), on which the juvenile relies, this is not a case where the documentary evidence conflicted with the parent's testimony—showing that she received paid time off for days for which restitution was sought and raising serious doubts about whether paid time off was also used on days for which documentation was missing. Here, the mother's undisputed testimony showed that she had used up all her paid time off and was not paid for any of her absences. Neither was her spreadsheet or testimony mere conjecture that guessed at the lost wages and airfare. *Cf. State v. Morris*, No. 19-1104, 2020 WL 4207399, at *3 (Iowa Ct. App. July 22, 2020) (holding that witness's testimony that he "guess[ed]" the amount of bills, and "had not prepared for the hearing," "failed to recall the total amount or produce documents" was not substantial evidence supporting restitution).

of the victim's appointments and surgeries—is not preserved because she did not raise the issue in the juvenile court. If she had done so, the State could have presented further evidence specifically addressing the need. But she neither cross-examined the mother about the issue nor made any argument against the restitution request on this basis.

Yet even assuming that the argument is preserved, the evidence supports a finding that both the mother and grandmother's claims were appropriate. For starters, the schedule of appointments and surgeries and the mother's travel schedules shows that many of the grandmother's lost wages were claimed for days when only she—and not the mother—could take the victim to his medical care. But even for the other days, the evidence shows that the grandmother drove the mother and victim. After all, the mother had flown to Iowa from Texas. So a factfinder could reasonably infer that she did not have a car to drive the victim alone. The court's restitution award is supported by substantial evidence.

**AFFIRMED.**