**In the Interest of L.K.S., A Minor Child,**

**Appeal of K.G., Natural Mother, Appellant.**

No. 89–970.

Supreme Court of Iowa.

Feb. 21, 1990.

Donald L. Carr, II, and David E. Grinde of the Donald L. Carr II Law Firm, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Valencia Voyd McCown, Asst. Atty. Gen., for appellee State of Iowa.

John M. Heckel, Cedar Rapids, for natural father.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL and ANDREASEN, JJ.

LAVORATO, Justice.

The juvenile court adjudicated four-year-old L.K.S. a child in need of assistance based on a finding that her stepfather had sexually abused her. The natural mother appealed. She contends the juvenile court erred when it (1) failed to determine the child's competency before admitting a videotaped interview with the child into evidence; (2) denied the mother her right to confrontation under the federal and Iowa constitutions; (3) admitted into evidence the criminal record of the stepfather; and (4) found that the State had established by clear and convincing evidence that L.K.S. was a child in need of assistance. We affirm.

I. *Background Facts and Proceedings.*

L.K.S. was born on June 24, 1984. Her natural parents were divorced on May 19, 1987. The decree awarded physical custody of L.K.S. and her seven-year-old brother, A.S., to K.G., the natural mother.

K.G. met C.G. in November 1987. K.G. became pregnant with C.G.'s child while K.G.'s dissolution was still pending. K.G. married C.G. in June 1988; the following December their child—G.S.—was born.

In early November 1988 K.G., accompanied by her son and mother, S.B., went to a garage sale. L.K.S. and C.G. remained at home. After the sale, A.S. and his grandmother went to the grandmother's home. K.G. returned to her own home to pick up L.K.S. On their trip to S.B.'s home, the child told her mother that she had a secret with C.G. After some prodding the child told her mother that C.G. had pulled down her underpants and had put "his wiener" on her "pee." When the mother and child reached S.B.'s home, the three discussed what L.K.S. had told her mother.

Later the mother confronted her husband—C.G.—about the child's story. The husband denied the story. But he did admit that the child had been with him in the bedroom while the rest of the family had gone to the garage sale.

At the time of the alleged incident, C.G. was under the care of a psychiatrist and was taking medication on a monthly basis. Because of his medical condition, C.G. was totally disabled for social security purposes.

Several days after L.K.S. told her story to K.G., K.G. and C.G. discussed it with C.G.'s psychiatrist. The psychiatrist referred them to the Child Protection Center in Cedar Rapids, where K.G. made her report of what the child had told her. A child abuse report based on this incident was filed with the Department of Human Services on November 10. The record is not clear as to who filed the report. *See* Iowa Code § 232.70 (1987).

On November 15 department investigators interviewed the child at the Child Protection Center. The child repeated her story to the investigators. But this time the child said there was an earlier incident as well and at that time C.G. had tried to put his finger inside her. The investigators videotaped their interview with the child. In conjunction with the interview a doctor examined the child. The doctor found no physical signs of sexual abuse but would not rule it out.

After the interview the investigators gave the mother the results of the interview and told her they felt that the child was being truthful. The investigators told the mother to ask C.G. to move out of the home until the investigation was complete. C.G. did voluntarily move out.

On November 23 the State filed a petition alleging that L.K.S. was a child in need of assistance. The petition was filed pursuant to the department's request based on an affidavit submitted by one of the investigators. On the same day the State also

filed an application for a no contact order. *See* Iowa Code § 232.82.

The juvenile court granted the no contact order on November 28, directing C.G. to have no contact with the child, pending hearing on further order of the court. The following day one of the investigators filed a founded sexual abuse report with the juvenile court based on the department's investigation. *See* Iowa Code § 232.71(7). The report named C.G. as the person responsible for the abuse. *See* Iowa Code § 232.71(2)(b).

Following an emergency removal hearing on January 5, 1989, the juvenile court removed the child from the home and placed her in the custody of the department for foster home care. The court also continued the no contact order.

On January 13 the mother filed a motion for independent medical exam of the child. The court overruled the motion.

The mother followed this motion with a second motion under Rule 104 of the Iowa Rules of Evidence. In this last motion the mother requested (1) a competency examination of the child before the introduction of the videotaped interview with her, (2) the production of the child to testify at the child in need of assistance (CHINA) hearing, and (3) a ruling that would prohibit the State from introducing C.G.'s criminal record at the hearing.

Hearing on the CHINA petition was set for January 30. Before taking evidence, the juvenile court heard arguments on the Rule 104 motion and overruled it as to the first two grounds. The juvenile court reserved ruling on the introduction of C.G.'s criminal record.

After taking evidence, the juvenile court continued the hearing to February 9. Several days before the hearing resumed, the mother subpoenaed the child. Before taking additional evidence, the juvenile court heard the State's motion to quash the subpoena and granted it. During the hearing the court received C.G.'s criminal record into evidence over the mother's objection.

Following the hearing, the juvenile court adjudicated L.K.S. as a child in need of assistance. The mother appealed.

■ Our review is de novo. Although we are not bound by the juvenile court's fact findings, we give them weight, especially when considering the credibility of witnesses. *In re D.T.*, 435 N.W.2d 323, 329 (Iowa 1989).

## II. *Admission of the Videotape.*

Iowa Rule of Evidence 104(a) establishes a procedure that allows a trial court to address preliminary matters concerning both exclusion and admission of evidence. Iowa R.Evid. 104 (Committee Comment 1983). One of these preliminary matters concerns the qualifications of a person who is to testify. Iowa R.Evid. 104(a).

By her Rule 104 motion, the mother wanted the juvenile court to determine L.K.S.'s competency to testify under Iowa Rule of Evidence 601 by having her testify at an in camera hearing. Rule 601 presumes that a child is competent to testify. But if the child's competency is questioned, the trial court is obligated to

determine whether the child is mentally capable of understanding the nature of the questions put to the child, whether the child is able to formulate intelligent answers and communicate impressions and recollections regarding the incident about which the child is to testify, and whether the child can understand the responsibility to tell the truth.

Iowa R.Evid. 601.

■ In her motion, the mother contended, among other things, that the November 15 videotaped interview was inadmissible without a prior determination of the child's competency.

On appeal the mother contends the juvenile court erred when it failed to determine such competency before admitting the videotape. We think the short answer to the mother's contention lies in Rule 601 itself.

Rule 601 allows the trial court to use various methods to determine the competency of a child. One such method includes

reviewing "recorded or unrecorded evidence." Iowa R.Evid. 601(2).

■ We view the videotape as recorded evidence. The investigator asked the child a series of questions designed to determine whether the child knew the difference between the truth and fiction. The child answered the questions appropriately. What we observed was a precocious child who understood the questions, and who could communicate clearly what allegedly happened to her. In our de novo review we conclude she easily met the competency requirements of Rule 601. We find no reversible error on this issue.

### III. Confrontation.

The mother urged an additional ground for the Rule 104 motion at the hearing. She contended that admitting the videotape without requiring the child's presence at the hearing would violate her sixth amendment right of confrontation under the United States Constitution. In support of her contention, the mother relied heavily on *In re Long*, 313 N.W.2d 473, 478 (Iowa 1981) (confrontation clause assumed to apply to CHINA proceedings).

The mother again raises this contention on appeal because the child did not appear, and the juvenile court did receive the videotape. We reject the mother's contention that the sixth amendment right of confrontation applies to CHINA proceedings. We do not consider the mother's additional contention that her rights under article I, section 10 of the Iowa Constitution were also violated, because she did not raise that issue before the juvenile court. *See Miller v. Wellman Dynamics Corp.*, 419 N.W.2d 380, 384 (Iowa 1988) ("Even issues of constitutional magnitude will not be addressed by this court if not presented in the trial court.").

■ The sixth amendment by its express language applies to criminal prosecutions. U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.") Textually, then, it is clear that the confrontation clause applies *only* in criminal cases. CHINA proceed-

ings are not criminal cases. *In re Delaney*, 185 N.W.2d 726, 728 (Iowa 1971). So we hold that there is no sixth amendment right to confrontation in CHINA proceedings.

We are mindful that in *Long* we proceeded on the assumption that there was such a right because "a CHINA proceeding may be the first step toward a termination of fundamental parental rights." *Long*, 313 N.W.2d at 478. The statement was dictum. Moreover, we refuse to equate the consequences of a CHINA proceeding with those of parental termination. We recognized such a distinction in *In re Wall*, 295 N.W.2d 455, 458 (Iowa 1980). In *Wall*, we said that in a CHINA adjudication, "separation of parent and child will ordinarily be temporary in nature, and therefore the intrusion upon the interest of a parent is less severe than where termination is decreed." *Id.* at 458. *But see Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 300 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.").

### IV. Admission of the Criminal Record.

■ In her Rule 104 motion the mother sought to exclude the criminal record of the child's stepfather as a violation of Iowa Rule of Evidence 404 pertaining to character evidence. Upon admitting this evidence the juvenile court said, "I'm going to receive the exhibit at this time. I'll determine whether it's probative in light of all the evidence."

When a case is tried to the court, we presume the court separates competent evidence from incompetent evidence. We think the juvenile court did that here because there is no indication in its ruling that it gave any weight to the criminal record. Given these circumstances we are not prepared to say the juvenile court committed prejudicial error when it received the criminal record into evidence.

## V. *Sufficiency of the Evidence.*

■ The district court found that L.K.S. was a child in need of assistance because of the sexual abuse to which she was subjected. The mother challenges the ruling, contending that the evidence was not clear and convincing that sexual abuse occurred. *See* Iowa Code § 232.96(2) (State's burden in CHINA proceeding is clear and convincing evidence).

Iowa Code section 232.2(6)(d) defines a child in need of assistance as one "[w]ho has been sexually abused by [a] member of the household in which the child resides."

> Section 709.1 pertinently provides that [a]ny sex act between persons is sexual abuse by either of the participants when the act is performed with the other participant in any of the following circumstances:
>
> . . . .
>
> (3) such other participant is a child.

A sex act, among other things, includes "contact between the genitalia of one person and the genitalia ... of another person or by use of artificial sexual organs." Iowa Code § 702.17. We have held that penetration of female genitalia with a human finger is a "sex act" within the meaning of section 702.17. *State v. Whetstine*, 315 N.W.2d 758, 760–61 (Iowa 1982).

Here the mother testified that the child told her that C.G. had put his "wiener" on her "pee." The child related the same incident to the investigators during the videotaped interview.

In addition, the child told investigators during the interview that on a prior occasion C.G. had touched her in her private part. She pointed to her genital area and indicated that this was her private part. The child demonstrated the same thing with the anatomical dolls. She said she did not like the touching because it hurt and made her sore.

According to the child both incidents happened while C.G. and she were alone and C.G. was in his underwear.

The mother corroborated the time and place of the second incident. The mother testified that C.G. was in bed, watching westerns on television and that the child was going into the bedroom to be with him. When interviewed by the authorities C.G. also corroborated the child's statements. He admitted that he was alone with her in his bedroom, and at the time he was only in his underwear.

Although the medical exam did not show physical signs of sexual abuse, the doctor did not rule it out. The lack of physical signs is not surprising in light of the nature of the abuse.

We, like the district court, were impressed with the child's sincerity and seriousness throughout the interview. Although the mother testified that the child had recanted the story and made light of it, we saw no hint of that on the videotape.

We agree with the district court clear and convincing evidence establishes that L.K.S. is a child in need of assistance because of sexual abuse perpetrated upon her by a member of her household. In our de novo review we reach that determination without considering C.G.'s criminal record.

## VI. *Disposition.*

The juvenile court properly admitted the videotape over the mother's competency and constitutional objections. In addition the court committed no reversible error when it admitted C.G.'s criminal record into evidence. Finally, from our de novo review we conclude there is clear and convincing evidence that L.K.S. is a child in need of assistance because of sexual abuse perpetrated upon her by a member of her household.

Finding no reversible error, we affirm.

AFFIRMED.