**In the Interest of S.J.M., A Minor Child,**

**T.D.M., Father, Appellant.**

No. 94–1123.

Court of Appeals of Iowa.

Aug. 17, 1995.

Curt Krull, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, Kathrine S. Miller–Todd, Assistant Attorney General, Mike Hunter, County Attorney, and Ray Blase and Marcia Schober, Assistant County Attorneys, for appellee State.

Susan Conn, Youth Law Center, Des Moines, for appellee minor child

Murray B. Gotsdiner of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellee mother.

Heard by HAYDEN, P.J., and SACKETT and CADY, JJ.

CADY, Judge.

This is an appeal from an adjudication by the juvenile court of a child in need of assistance (CINA). On our review, we affirm.

Stephanie is the daughter of Troy and Tammy. She was born January 22, 1990. Troy and Tammy divorced in 1991 and Tammy was awarded physical care of Stephanie. Troy and Tammy are hostile to one another.

In July 1993 Tammy contacted the department of human services (DHS) to report that, after returning from a week of visitation with Troy, Stephanie told Tammy's fiance, Todd, that "daddy Troy" had licked her crotch. Todd reported that when he was putting Stephanie to bed she pulled up her nightgown, spread her legs apart, spread her genitals apart and told him to lick it. Todd

reported that Stephanie said "isn't it pretty" and that "daddy Troy" liked it.

The report was investigated by the police and the DHS. Stephanie, Tammy, Troy, Todd, and Troy's wife were all interviewed. Stephanie continued to report that "daddy Troy" licked her butt or crotch. She stated it "felt like tickles." She also spread the legs of an anatomically correct doll and pointed. Troy denied the allegations and suggested either the family dog had licked Stephanie or that Stephanie was coached.

The investigation prompted the State to file a petition for child in need of assistance, and an adjudicatory hearing was held. Troy attempted to have the parties stipulate that he passed a lie detector test as a part of the police investigation. All parties objected. The court found lie detector tests were not generally accepted as reliable indicia of truthfulness and refused to accept any evidence of a lie detector test.

Detective Randy Hunefeld testified about his investigation, as did child abuse investigator Connie McClellan. McClellan concluded the allegations of sexual abuse were founded. Social worker Gladys Alvarez testified that she had been working with Stephanie in therapy. Her testimony included Stephanie's statements about "daddy Troy" licking her. The State also offered a report written by Alvarez to the county attorney. Alvarez later testified about the various indicators she looks for when trying to assess the reliability of a child's report of sexual abuse. She concluded that the indicators of reliability were present in this case.

The evidence presented by Troy included the deposition testimony of Gary Wells, a professor of psychology. Dr. Wells concluded it was not possible to determine whether Stephanie had in fact experienced the reported incident. At the hearing Troy also offered into evidence a written report by Dr. Wells. The court sustained the State's objections that the report was hearsay and contained opinions which invaded the province of the jury. The court also found Dr. Wells' testimony unhelpful and gave it no weight in the determination.

The court found clear and convincing evidence that Stephanie had been sexually abused by Troy, and adjudicated Stephanie to be a CINA pursuant to Iowa Code section 232.2(6)(d) (1993). Following a subsequent hearing, the juvenile court entered a dispositional order placing Stephanie in Tammy's custody under the supervision of DHS. The no-contact order was entered, and Troy was ordered to complete a sexual offender program.

Troy raises several issues on appeal. We address each separately.

## I. Alvarez Testimony

The father first argues that the trial court erred in admitting the written report and opinions of Gladys Alvarez, a clinical social worker and therapist who works with young children alleged to have been sexually abused. Alvarez is employed by the Des Moines Child and Adolescence Guidance Center and was Stephanie's therapist following the sexual abuse report.

During the course of the direct examination of Alvarez, the State offered a letter into evidence written by Alvarez to an assistant county attorney concerning the therapy sessions with Stephanie. The father objected to the offer, asserting it contained inadmissible hearsay, opinions beyond the expertise of the witness and for which "no proper foundation" had been laid, and "invaded the province of the jury." The court reserved its ruling and indicated that a written ruling would be made as a part of the final written decision.

Alvarez later testified to the various factors she uses to assess the reliability of sexual abuse accounts of children, and that she found nothing to doubt the reliability of Stephanie's statements. No objection was lodged to this line of questioning.

The trial court failed to make a specific ruling on the offer of the letter in its written decision. The father did not respond with a posttrial motion requesting the ruling.

Error may not be predicated on a ruling which admits evidence unless a substantial right of the opposing party is affected and a timely objection was made which enunciated the specific grounds of the objection, unless the grounds were otherwise ap-

parent from the record. Iowa R.Evid. 103(a). The objection must generally be specific enough to alert the trial court to the legal question or problem raised, and enable opposing counsel to take any possible corrective action to remedy the defect. *State v. Williams*, 207 N.W.2d 98, 109–10 (Iowa 1973).

In this case, the father timely objected to the offer of the letter written by Alvarez to an assistant county attorney. The objection was also specific enough to alert the trial court to the legal issue presented.[1] However, after the trial court reserved ruling on the objection and failed to include a specific ruling on the objection in its final decision, the father was required to ask the court for a ruling by filing a motion under Iowa Rule of Civil Procedure 179(b). *In re Estate of Claussen*, 482 N.W.2d 381, 385–86 (Iowa 1992). The failure to ask for a ruling constitutes a waiver. *Id.*

The father also waived any error in permitting Alvarez to testify at trial about the factors she used to assess the reliability of the child's claim. This evidence was presented at trial without objection. *See* Iowa R.Evid. 103(a).

## II. Wells Testimony

The father next claims the trial court erred in failing to admit the written report by Dr. Wells, and in failing to give his deposition testimony any weight. The trial court indicated it gave no weight to his testimony because Dr. Wells had performed no clinical work for 17 years, was not involved in the detection or treatment of child victims, was provided only a small portion of the evidence in the case, and never met with Stephanie or reviewed any reports. The court sustained the objections to questions of Dr. Wells which sought his opinion whether Stephanie was truthful, and sustained objections to portions of the written report of Dr. Wells, including his opinion whether Stephanie actually experienced the event.

We recognize that the weight to be given evidence at trial is within the province of the finder of fact. Moreover, expert testimony regarding the truthfulness of a witness is inadmissible "because weighing the truthfulness of a victim is a matter reserved exclusively to the fact finder." *State v. Myers*, 382 N.W.2d 91, 95 (Iowa 1986). We also observe that a written report of a witness generally constitutes a prior out-of-court statement of the witness and is admissible only if the witness is available for cross examination and one of the three criteria under Iowa Rule of Evidence 801(d)(1) are met. Dr. Wells was not available for cross-examination in this case, and none of the three circumstances set forth in rule 801(d)(1) were present. The trial court did not err in rejecting the testimony of Dr. Wells, and in sustaining the objections to his report.

## III. Polygraph Test Results

The father next argues that the trial court erred in excluding evidence of the results of a polygraph examination he submitted prior to trial. Polygraph evidence is generally inadmissible in the absence of a stipulation by the parties. *In re A.D.L.*, 497 N.W.2d 178, 180 (Iowa App.1992). The father asks that we carve out an exception to this rule in child in need of assistance actions involving allegations of child sexual abuse when the evidence against the accused is based largely on statements of the victim and experts who have interviewed the victim. *See In re X*, 110 Idaho 44, 714 P.2d 13, 18 (1986) (Polygraph results admissible in sexual abuse case under Idaho Child Protective Act when evidence is "almost entirely" hearsay and opinion evidence from counselors and psychologists). *See also* McCormick on Evidence § 206 (John W. Strong ed., 4th ed. 1992).

The rules of evidence applicable to civil trials are required to be followed in CINA proceedings, except as otherwise spe-

1. The general objection that the question calls for an "opinion and conclusion" of the witness and "invades the province of the jury" lacks specificity and has no force or effect. *Olson v. Katz*, 201 N.W.2d 478, 482 (Iowa 1972). Some specific reasons for exclusion must be pointed out. In this case, counsel for the father indicated that the opinions went beyond the expertise of the witness as a therapist.

cifically provided in the juvenile justice act. Iowa Code § 232.96(3) (1993). Our courts have refused to admit polygraph results under our rules of evidence because of their questionable reliability. *See Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 101–02 (Iowa 1985); Iowa R.Evid. 403. Iowa's juvenile justice act makes no special provision for the admission of polygraph results. Accordingly, we find the trial court did not abuse its discretion in excluding the results.

## IV. Sufficiency of Evidence

The father lastly asserts the trial court erred in finding there was clear and convincing evidence of sexual abuse. We review this claim de novo. *In re L.K.S.*, 451 N.W.2d 819, 821 (Iowa 1990). We are not bound by the findings of the juvenile court, but give them weight because of its unique opportunity to hear and observe the witness. *In re S.V.*, 395 N.W.2d 666, 668 (Iowa App. 1986).

The State has the burden of proving the allegations by clear and convincing evidence. Iowa Code § 232.96(2) (1993). Clear and convincing evidence means no serious or substantial doubt exists about the correctness of the conclusions drawn from the evidence. *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa App.1983).

We find clear and convincing evidence to support the adjudication. Stephanie was consistent in relating the events to others, and was able to describe the sensation experienced with the action. She was able to recall some details, and used age appropriate language. Moreover, we give weight to the findings of the juvenile court, who was able to observe the various witnesses.

**AFFIRMED.**

SACKETT, Judge (dissenting).

I dissent.

Our primary responsibility in this case is to Stephanie, a child who was the center of a bitter struggle between her divorced parents and who, at three and one-half years of age, allegedly reported to her mother's fiance that her father had engaged in inappropriate sexual contact. The child's allegations could not be either verified or discounted by a physical examination. The mother reported the matter to the police. As the majority points out, the police interviewed the child, the mother, and the father, the mother's fiance, and the father's wife. The father denied the conduct and took a lie detector test that he passed. The State elected not to prosecute the father in a criminal action but a child in need of assistance petition was filed. The trial court considered the testimony concerning the child's truthfulness introduced by the State, rejected a report on the issue of the child's credibility offered by the father, and did not consider the results of the lie detector test that the father attempted to introduce. The trial court found clear and convincing evidence of sexual abuse by the father.

The father urges, among other issues on appeal, in cases such as this, the results of a lie detector test should be considered. I am inclined to agree the unique facts of this situation and our need to protect the child provide a compelling reason to allow the admission of polygraph evidence under limited circumstances and in closely tailored circumstances such as these where the only evidence of abuse is based on hearsay and opinions as to the truthfulness of the child. I recognize polygraph evidence is generally inadmissible. I also recognize the polygraph results are still determined to be of questionable reliability. But I suggest their reliability is on par or greater than the evidence the trial court considered in making its factual consideration.

The focal issue is whether the father engaged in the conduct. His visitation rights should be severely restricted if he did commit the acts with which he is charged and, if so, it is critical the child have the necessary protection from him.

But, if the child's complaints have been fabricated or coached, then it is the mother and her fiance who should be limited in their access to the child. A second nagging issue may be lurking as to whether the child was abused but allegedly identified the wrong perpetrator and, if so, there may be a prob-

lem with the mother not giving the child the required protection.

On one side of the coin is the fact the child allegedly detailed the abuse to her mother's fiance a week after it was to have happened and repeated it to several people who found it credible. The trial judge found there was clear and convincing evidence the abuse occurred.

On the other side of the coin is the fact this is a classification of case where false reporting is the most likely to occur; the child was only three and one-half years old, an age when a child is easily influenced and confused. Furthermore, evidence of others as to the truthfulness of the child has no proven reliability; and a recent study suggested, particularly where the witness may have an agenda, such testimony is not reliable. *See* Thomas M. Horner & Melvin J. Guyer, *Prediction, Prevention, and Clinical Expertise in Child Custody Cases in Which Allegations of Child Sexual Abuse Have Been Made,* Family Law Quarterly, Vol. XXV, No. 3, 381 Fall 1991. Thomas M. Horner, a clinical assistant professor of psychology and director of the Infancy and Early Childhood Clinic in the Department of Psychiatry at the University of Michigan School of Medicine, and Melvin J. Guyer, a professor of social psychology in the Department of Psychiatry at the University of Michigan School of Medicine, who holds a Ph.D. in psychology and a J.D. from the University of Michigan, point out in their article that, as a victim, the child is vulnerable to an adult's ulterior purpose cloaked in suggestive tones and the child is easily led to say and do things that fit the adult's conception. *See* Thomas M. Horner & Melvin J. Guyer, *Prediction, Prevention, and Clinical Expertise in Child Custody Cases in Which Allegations of Child Sexual Abuse Have Been Made,* Family Law Quarterly, Vol. XXV, No. 3 at 389, Fall 1991.

When all these factors are considered, I am of the opinion the polygraph test results may bear a greater indication of reliability than the other evidence considered. For the child's protection, I feel, under these limited circumstances, the polygraph should be considered.

The State suggests this polygraph test was not a credible test. The father's attorney alleged it is and it was given at the direction of the West Des Moines Police Department. The record is confusing. Because I see the only real issue is the child's protection, I would remand to the trial court to receive evidence of how the polygraph test was given, the qualifications of the examiner, and the results of the test.

I note the majority has resolved several issues on error preservation and the State has suggested the record in this case does not lend itself to resolving the issue of the admission of a polygraph test under this special circumstance. I suggest error preservation is not controlling where applying it may result in a court not considering evidence that gives it guidance in how to protect a child.