**IN THE COURT OF APPEALS OF IOWA**

No. 15-0980
Filed September 10, 2015

**IN THE INTEREST OF C.V.-M.,**
**Minor Child,**

**L.A., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig Dreismeier, District Associate Judge.

A father appeals from the order adjudicating his child as a child in need of assistance. **AFFIRMED IN PART AND REVERSED IN PART.**

Scot Strait, Council Bluffs, for appellant father.

Sara Benson, Council Bluffs, for mother.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Matthew Wilber, County Attorney, and Eric Strovers, Assistant County Attorney, for appellee State.

Roberta Megel, Council Bluffs, for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

The father appeals from the juvenile court's order adjudicating the child, C.V.-M., a child in need of assistance (CINA) and the subsequent dispositional order.[1] The father maintains the State failed to prove by clear and convincing evidence that C.V.-M. is a CINA pursuant to Iowa Code sections 232.2(6)(c)(2), (g), and (n) (2015). We affirm in part and reverse in part.

**I. Background Facts and Proceedings.**

C.V.-M. was born in Nebraska in October 2011. She was placed with a foster family at birth. C.V.-M.'s mother's parental rights were terminated in 2013. At approximately the same time, the father's paternity was established. C.V.-M. was placed in the father's care and custody in January 2014. The father participated in voluntary services in Nebraska.

On December 23, 2014, the father left C.V.-M. with his girlfriend while he purportedly sought employment. During the approximately five hours he was gone, the girlfriend became unwilling to care for C.V.-M. and called a mutual friend who then took C.V.-M. to the police station. The child was taken into the custody of the Iowa Department of Human Services (DHS).

When DHS contacted the girlfriend, she reported that the father and child were no longer allowed to reside with her and, therefore, would be homeless. The girlfriend also reported that she was aware the father had a history of substance abuse but had never witnessed him using drugs.

---

[1] The mother's parental rights were terminated by the state of Nebraska prior to the commencement of proceedings against the father.

The father was supposed to attend an appointment with DHS at 8:30 a.m. on December 24, 2014. When the father did not arrive on time, DHS called the telephone number he had left. A man named Stacy answered and reported that the father had intended to stay with him the night before, but Stacy had asked the father to leave. He was unaware where the father had spent the night.

The father arrived for his appointment approximately two hours late. When asked where he stayed the previous night, he stated he stayed at his friend Stacy's home. When he was told the caseworker had talked to Stacy who had contradicted the statement, the father reportedly became irate and demanded the return of his daughter. DHS requested the father submit to drug testing based on his behaviors and DHS's concerns he was using illegal substances. The father refused. C.V.-M. was not released to his care.

The Nebraska caseworkers reported that the father had stopped participating in voluntary services in January 2014. The father tested positive for marijuana and benzodiazepines on November 11, 2014. He reported to the caseworkers that he had lied to his doctor in order to get the benzodiazepines prescription. The father and C.V.-M. had moved into a shelter after the father's mother kicked him out of her home and got a protective order against him on October 23, 2014. They were kicked out of the shelter on December 1, 2014, when the father refused to submit to a drug screen.

Stacy, the father's friend, met with the caseworker at the DHS office on December 24, 2014. Stacy reported he had seen the father smoke methamphetamine out of a pipe with C.V.-M. in a vehicle. He indicated he

believed the father was "at a crack house right now." Stacy reiterated that he would not let the father stay with him.

A temporary removal hearing was held December 30, 2014. The court ordered that the care and control of C.V.-M. would remain with DHS. The father was ordered to complete a substance abuse evaluation and comply with treatment recommendations. He was also ordered to submit to random drug screens.

During a conversation with the DHS caseworker on January 12, 2015, the father complained that C.V.-M. had not been immediately returned to his care. The caseworker explained the concerns regarding substance abuse and reminded the father that he had refused to submit to drug testing. The father admitted he might have tested positive for marijuana if he had taken the test, but he denied he had used any other substances.

The father provided a hair sample for drug testing as ordered on January 22, 2015, but the amount of hair was insufficient to complete the testing. The same day, the father told the caseworker he would have tested positive for benzodiazepines because he took an anxiety pill that was not his.

A contested CINA adjudication hearing was held on February 11, 2015. The court adjudicated C.V.-M. a CINA pursuant to Iowa Code sections 232.2(6)(c)(2), (g), and (n).[2]

---

[2] On February 27, 2015, the father appealed from the adjudication order—as he was instructed to do by the juvenile court. However the adjudication order is not a "final" appealable order. *See In re Long*, 313 N.W.2d 473, 476 (Iowa 1981) ("[W]e hold that an order of adjudication in a CHINA case, unaccompanied by a disposition, is a not a 'final' order . . . ."). Rather, proper procedure is to appeal from the dispositional order following adjudication. *Id.*

Between the adjudication and dispositional hearing, the father completed an anger management course as ordered. He attended twenty-one of the scheduled thirty-four visits with C.V.-M. At a visit on April 20, a pill fell out of the father's belongings. The provider was able to identify the pill as morphine. The father denied it was his and discarded it. He missed drug screens on March 2, March 24, March 30, April 1, and April 2, April 8, and April 10, 2015. The father completed an addiction and mental health evaluation on May 20, 2015. At the time, he reported he was living in his van.

A dispositional hearing was held May 22, 2015. The juvenile court reaffirmed the goal of reunification of the father and C.V.-M. Care and custody of the child remained with DHS. The father was ordered to abstain from illicit drugs. He agreed to have a drug patch placed on him directly following the hearing. The father was also ordered to obtain and maintain a verifiable source of income and obtain and maintain safe and suitable housing for the placement of his daughter.

The father appeals.[3]

## II. Standard of Review.

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary

---

[3] On appeal, the father also maintains the juvenile court abused its discretion in ordering him to complete a psychological evaluation, chemical dependency evaluation, and an anger management course. From our review of the record, it is apparent the father has already completed each of the ordered services. Thus, this issue is moot, and we will not consider it. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013) ("Ordinarily, an appeal is moot if the issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy. We will generally not review moot issues . . . ." (internal citations and question marks omitted)).

concern is the child's best interests." *Id.* "CINA determinations must be based upon clear and convincing evidence." *Id.* at 41; *see also* Iowa Code § 232.96(2).

**III. Discussion.**

The father maintains the State failed to prove by clear and convincing evidence that C.V.-M. is a CINA pursuant to Iowa Code section 232.2(6)(c)(2), (g), and (n).

**A. Iowa Code section 232.2(6)(c)(2).**

Iowa Code section 232.2(6)(c)(2) provides, "'Child in need of assistance' means an unmarried child who has suffered or is imminently likely to suffer harmful effect as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." The father challenges the admissibility and reliability of the State's evidence presented, arguing that "actual evidence of the child not receiving adequate care or supervision" and "actual evidence of drug addiction" were never presented.

First, we note Iowa Code section 232.96(6) provides for the admission of a "report, study, record, or other writing or an audiotape or videotape" "notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice." It also provides, "The circumstances of the making of the report, study, record or other writing or an audiotape or videotape recording, including the maker's lack of personal knowledge, may be proved to affect its weight." Iowa Code § 232.96(6). The reports and hearsay statements the father challenges were admissible and properly considered by the juvenile court.

The father also contends the statements in the reports from witnesses were not reliable because the father never had an opportunity to cross-examine or confront these witnesses. Although this fact may bear on the weight the court may give to the evidence, there is no Sixth Amendment right to confrontation in CINA proceedings. *In re L.K.S.*, 451 N.W.2d 819, 822 (Iowa 1990) (concluding the right to confrontation only applies to criminal prosecutions). Here, the father never testified to controvert the State's evidence, including the hearsay statements contained in the report. Upon our de novo review, we cannot conclude the juvenile court was in error to give weight to the reports and the statements contained within the reports when the information was uncontroverted.

According to a report, the father's friend, Stacy, reported the father was frequenting "crack houses." Stacy also reported to DHS that he had witnessed the father "smoke a meth pipe" in a vehicle with C.V.-M. The father personally admitted he had taken prescription medications that were not his, had lied to a doctor in order to obtain prescription medications, and had smoked marijuana during the pendency of the case. Additionally, he failed a November 2013 drug test administered by the State of Nebraska while C.V.-M. was still in his care. Although he did not have any positive drug tests during the pendency of this case, the father failed to submit to tests seven different times in spite of being court ordered to do so.

We believe the weight of the evidence establishes the father frequently or regularly uses illegal drugs and abuses prescription medication and may have a drug addiction. The evidence also supports the conclusion that the father used

methamphetamine on at least one occasion while C.V.-M. was in his care. Our supreme court has stated, "[A] juvenile court could reasonably determine that a parent's active addition to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the child[] in the parent's care." *J.S.*, 846 N.W.2d at 42. In *J.S.*, the supreme court concluded however, that "general statements about methamphetamine addiction are" not "enough by themselves to prove that a child is imminently likely to suffer *physical harm* under section 232.2(6)(b)." 846 N.W.2d at 42 (emphasis added). Ultimately, the court concluded that because the parent in J.S. had a capable caretaker or parental surrogate to care for the child the child was not in need of assistance under section 232.2(6)(b). *Id.*

Unlike *J.S.*, here there was no evidence that another responsible adult was supervising the child during the time the father was using methamphetamine while the child was in the same vehicle, albeit, on only one occasion. Moreover, this case is grounded upon section 232.2(6)(c)(2)—requiring an imminent likelihood to suffer *harmful effects*—rather than section 232.2(6)(b), which requires an imminent likelihood to suffer *physical injury*. We conclude the father's active drug use, including the use of methamphetamine in the presence of the child, is sufficient to adjudicate the child pursuant to Iowa Code section 232.2(6)(c)(2). Thus we affirm on this ground.

**B. Iowa Code section 232.2(6)(g).**

Iowa Code section 232.2(6)(g) provides, "'Child in need of assistance' means an unmarried child [w]hose parent . . . fails to exercise a minimal degree of care in supplying the child with adequate food, clothing, or shelter and refuses

other means made available to provide such essentials." The father makes similar arguments regarding the reliability of the evidence considered by the juvenile court and the proper weight to give the evidence.

The State failed to prove by clear and convincing evidence that C.V.-M. is a CINA under section 232.2(6)(g). Although the father did not have a stable home of his own when DHS became involved with the family, the caseworker testified he had stayed with his mother, stayed with his girlfriend and friends, and utilized a shelter in the area as needed.[4] When asked at the CINA hearing, the DHS caseworker testified that she was unaware of any days or nights when the father had failed to provide adequate shelter to C.V.-M. while she was in his care. Additionally, the father has a history of availing himself of services in the past. He voluntarily participated and received services from the state of Nebraska after receiving custody of C.V.-M. The intake report completed by DHS shows the child was clean and the only note regarding her clothing was that it was mismatched. There were no "major medical illnesses or complaints" noted. The only concerns listed were a bruise measuring approximately one and a half inches long on the child's side and a second "small and minor" bruise. Although the father did not have stable housing at the time the family became involved with DHS, the State failed to present sufficient evidence that the child had not received adequate food, shelter, and clothing while in the father's care.

---

[4] According to the evidence, the child stayed with the father at a shelter while she was in his care. We acknowledge, and express concern, that taking residence in a homeless shelter may not be a safe environment for a child, but without evidence to the contrary, we decline to generalize that all shelters are unsafe.

**C. Iowa Code section 232.2(6)(n).**

Iowa Code section 232.2(6)(n) provides, "'Child in need of assistance' means an unmarried child [w]hose parent's . . . mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." Stacy reported to the caseworker that he had witnessed the father smoke methamphetamine while C.V.-M. was with the father in a vehicle. We believe that the father cannot provide adequate care for C.V.-M. when he is using drugs. Child protection statutes are designed to prevent probable harm to the child and do not require delay until after harm has occurred." *J.S.*, 846 N.W.2d at 43 (internal quotation marks and citations omitted). The juvenile court received evidence that the father was not only abusing substances while C.V.-M. was being cared for by a third party, but also when C.V.-M. was present in a vehicle and the father was responsible for her care. We believe this is sufficient to establish by clear and convincing evidence that C.V.-M. is a CINA pursuant to section 232.2(6)(n).

**IV. Conclusion.**

For the foregoing reasons, we reverse the order of the juvenile court finding C.V.-M. to be a CINA under Iowa Code section 232.2(6)(g). We affirm the juvenile court's order in all other respects.

**AFFIRMED IN PART AND REVERSED IN PART.**