# IN THE SUPREME COURT OF IOWA

No. 20–0833

Submitted November 17, 2020—Filed December 18, 2020

**IN THE INTEREST OF N.C.,**
Minor Child.

**T.C.,** Father,

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Monroe County, William Owens, Associate Juvenile Judge.

A father seeks further review of a court of appeals decision reversing the dismissal of a petition to adjudicate a child in need of assistance. **DECISION OF COURT OF APPEALS AFFIRMED; JUVENILE COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellant.

Julie R. De Vries of De Vries Law Office, PLC, Centerville, attorney and guardian ad litem for minor child.

Jonathan Willier, Centerville, for appellee.

**McDONALD, Justice.**

This is a child-in-need-of-assistance proceeding arising under chapter 232 of the Iowa Code. The State petitioned to adjudicate the child, N.C., in need of assistance pursuant to Iowa Code section 232.2(6)(*b*) (physical abuse or neglect), (*d*) (sexual abuse), and (*p*) (exposure to dangerous substances) (2020). The juvenile court concluded the State failed to prove its case and dismissed the State's petition. The court of appeals affirmed the juvenile court's dismissal on the grounds set forth in subsections (*b*) and (*p*) but reversed the dismissal on the ground set forth in subsection (*d*). We granted the father's application for further review. "On further review, we have the discretion to review any issue raised on appeal." *Burton v. Hilltop Care Ctr.,* 813 N.W.2d 250, 255 (Iowa 2012) (quoting *State v. Marin,* 788 N.W.2d 833, 836 (Iowa 2010), *overruled on other grounds in Alcala v. Marriot Int'l,* 880 N.W.2d 699 (Iowa 2016)). "In exercising our discretion, we can choose which issues to address." *Id.* We choose to address only the sufficiency of the evidence regarding the statutory ground set forth in section 232.2(6)(*d*). The court of appeals decision is final as to the other grounds.

We review the juvenile court's decisions de novo. *See In re L.H.,* 904 N.W.2d 145, 149 (Iowa 2017) (quoting *In re J.S.,* 846 N.W.2d 36, 40 (Iowa 2014)). We give weight to the juvenile court's factual findings, especially when credibility is at issue, but are not bound by them. *In re D.T.,* 435 N.W.2d 323, 329 (Iowa 1989).

Iowa Code section 232.2(6)(*d*) defines a child in need of assistance as a child who "has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides." It is the State's burden to prove by clear and convincing evidence the statutory ground supporting adjudication. *See*

Iowa Code § 232.96(2). Clear and convincing evidence "is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest in raising his child." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016) (en banc) (citation omitted); *see also In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

The record reflects this family came to the attention of the Iowa Department of Human Services (IDHS) in February 2020 after IDHS was notified a child, N.C., had reported her father had touched her inappropriately. IDHS social worker Aishya Brigham responded to the report and went to the school to interview N.C. At the time, N.C. was eight years old. Her mother passed away in 2016, and she was in the sole custody of her father, Terry. N.C. told Brigham her father had touched her "private parts" on one occasion. N.C. said her "private parts" are where her bladder is. The child also discussed other incidents involving her father. She said her father was "very mean" and struck her with his hand, a shoe, and a belt. Brigham asked N.C. if these incidents ever left marks, and N.C. replied they did not.

On the same day of the interview at the school, the State removed N.C. from the home. She was placed with her maternal grandmother. Also on the same day, Brigham went to the family home and informed Terry of the removal order. Terry was upset and stated the allegations were lies. However, Terry did state he cuddles N.C. a lot and once showed her a "birds and the bees" video after she said she had a boyfriend. Terry stated the video upset N.C., so he turned it off.

Three days after N.C. met with Brigham, N.C. was interviewed and evaluated by a forensic interviewer at the STAR Center, at Blank Children's Hospital in Des Moines. Brigham observed the interview. During the interview, N.C. stated on one occasion her father asked her to take off the skirt she was wearing. She felt very uncomfortable. She stated on this occasion her father touched her vagina with his hand when they were on the couch and then again the next morning in her bed. N.C. told the interviewer that her father did not penetrate her vagina but touched all around it. She said he touched the skin of her private parts. N.C. also stated her father showed her videos of other people having sex. After this interview, IDHS founded the allegation of sexual abuse against Terry.

The matter came on for an adjudicatory hearing on May 4. Brigham testified at the hearing. Brigham testified about her interview with N.C. at the school during which N.C. stated her father touched her one night while they were cuddling. Brigham also testified that she spoke to the grandmother, who expressed reservations about Terry's ability to care for N.C. Brigham testified she was aware the grandmother lost a custody dispute over N.C. to Terry after N.C.'s mother passed in 2016. Brigham was also cross-examined about the contents of the STAR Center interview. Brigham testified she only watched "bits and pieces" of the interview and did "not recall everything." Based upon what she did watch and remember, she found N.C. credible.

During the hearing, the State also offered into evidence three exhibits: 1) IDHS's recommendations, 2) the child protective services child abuse assessment summary, and 3) progress notes from the STAR Center interview. However, at the time, exhibits 2 and 3 were not loaded onto the Electronic Document Management System (EDMS). The juvenile court admitted each of the exhibits with the instruction that the State was to file

them in EDMS. The State agreed to file the exhibits "directly following the hearing." The State did not file the exhibits directly following the hearing. Instead, on May 27, the State filed exhibit 2, the child protective services child abuse assessment summary. The summary was prepared by Brigham. It showed IDHS founded the report. It also contained a summary of the interviews and narrative of events.

The next day, on the morning of May 28, the juvenile court filed its findings of fact, conclusions of law, and order. At the time of the decision, the State still had not filed exhibit 3, the progress notes from the STAR Center interview. The juvenile court held the State failed to prove the child was in need of assistance on any of the grounds alleged. With respect to the allegations of sexual abuse, the juvenile court concluded there was "some evidence—perhaps a preponderance of evidence—that [the father] sexually abused, or is imminently likely to sexually abuse [the child]" but held the evidence was not clear and convincing. The juvenile court found it could not independently verify the credibility of N.C.'s claims because the video recording of the STAR Center interview was not submitted.

Shortly after the juvenile court's ruling, the State moved to amend and enlarge the juvenile court's order pursuant to Iowa Rule of Civil Procedure 1.904(2). In support of the motion, the State filed exhibit 3, the progress notes from the STAR Center interview. The State also requested the juvenile court consider new evidence, including the video recording of the STAR Center interview, an affidavit by Brigham, and a letter from N.C.'s therapist.

The juvenile court granted in part and denied in part the State's motion to amend and enlarge. The juvenile court granted the State's motion to consider exhibit 3, the progress notes from the STAR Center interview admitted at the hearing but belatedly filed. The juvenile court

denied the motion with respect to the new evidence. On the merits, the juvenile court amended certain parts of its ruling but stated exhibit 3 did "not materially change the juvenile court's conclusions of law and order that the petitioner failed to establish by clear and convincing evidence the child is a Child in Need of Assistance pursuant to Iowa Code Section 232.2(6)(b), (d) and (p)."

On de novo review, we respectfully disagree with the juvenile court's findings and conclusions on the ground at issue. In similar circumstances, we have found a child's credible report of sexual abuse to amount to clear and convincing evidence sufficient to support adjudication under section 232.2(6)(*d*). In *In re E.H. III*, 578 N.W.2d 243, 248 (Iowa 1998), we affirmed an adjudication on this ground where the child was able to respond to questions and "remembered the details of the events involving her father." In *In re L.K.S.*, 451 N.W.2d 819, 823 (Iowa 1990), we affirmed an adjudication where the child said her stepfather put his "wiener" on her "pee" and "had touched her in her private part." Despite the stepfather's contention that the abuse had not occurred, we found the allegation credible, in part, because some of the child's statements were corroborated by the stepfather and mother. *See id.*

The court of appeals has also affirmed adjudications under similar circumstances. In *In re A.D.L.*, 497 N.W.2d 178, 180 (Iowa Ct. App. 1992), the court of appeals affirmed an adjudication under section 232.2(6)(*d*). The court of appeals found compelling, among other things, the detail and consistency of the child's allegations:

> Alicia has maintained consistency in recounting the incidents of sexual abuse. She continues to identify her father as the perpetrator. The detail and explicit description Alicia has provided regarding the sexual acts is significant. The descriptions Alicia provided were indicative of her truthfulness. Alicia related the incidents of abuse with

detailed information about location and circumstances surrounding the abuse.

*Id.* The court of appeals also affirmed another adjudication under section 232.2(6)(*d*) where the child "was consistent in relating the events to others, . . . was able to recall some details, and used age appropriate language." *In re S.J.M.*, 539 N.W.2d 496, 500 (Iowa Ct. App. 1995).

As in the cited cases, several considerations lead us to conclude N.C.'s report of sexual abuse was credible and the State satisfied its burden of proof in this case. First, N.C. described the incidents in detail. She stated she was wearing a skirt and her father asked her to take it off. She stated her father touched her vagina with his hand and while his fingers did not go in the vagina, he touched all around it. She stated her father touched her vagina with his hand, and while his fingers did not go in the vagina, she said he touched all around it. She stated he touched her skin. N.C. also said her father showed her videos on his cell phone of people having sex. The amount of detail regarding the location, facts, and circumstances of the sexual abuse enhances the credibility of her allegations. *See In re A.D.L.*, 497 N.W.2d at 180.

Second, N.C. was consistent in her reporting of events. *See In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) ("The girls' statements, repeated with little variation to several adults, merits more credence."). N.C. described the same events to Brigham and to the interviewer at the STAR Center. This was evidenced by Brigham's testimony, the child abuse assessment summary, and the progress notes from the STAR Center. The consistency, detail, and description in a child abuse victim's statements are "indicative of . . . truthfulness." *In re A.D.L.*, 497 N.W.2d at 180.

Third, N.C.'s statements were corroborated, in part, by Terry. When Brigham went to Terry's home to inform him about the removal order,

Terry admitted he cuddles N.C. a lot. N.C. stated the touching incidents occurred while the two were cuddling. Terry also admitted that he showed N.C. a "birds and the bees" video after N.C. said she had a boyfriend. Terry stated the video scared her, so he turned it off. This is consistent with N.C.'s statements that her father showed her more than one video on his cell phone of people having sex. The father's corroboration of the child's allegations give heightened credibility to her claims of sexual abuse. *See In re L.K.S.*, 451 N.W.2d at 823.

Terry argues there is no evidence to support that the video was pornographic. It is true that Terry did not admit to showing his eight-year-old child pornography, but he did admit to showing her a video about the "birds and the bees." In this context, we can only conclude the "birds and the bees" was a euphemism for sex. This common sense conclusion is confirmed by N.C.'s statement that the videos depicted people having sex. To show sex videos to an eight-year-old child because she had a "boyfriend" shows a lack of judgment that further justifies oversight and services. *See, e.g.*, *In re T.V.*, No. 02–1746, 2003 WL 21543784, at *2 (Iowa Ct. App. July 10, 2003) (per curiam) (holding that there was clear and convincing evidence the children were imminently likely to suffer harm due to exposure to pornography in the home). "Child protection statutes 'are designed to prevent probable harm to the child and do not require delay until after harm has occurred.'" *In re J.S.*, 846 N.W.2d at 43 (quoting *In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990)).

Although we conclude in this case that the State satisfied its burden of proof to adjudicate N.C., a child in need of assistance pursuant to Iowa Code section 232.2(6)(*d*), we do so with a cautionary note. "The State has a duty to see that every child within its borders receives appropriate care and treatment." *In re T.A.L.*, 505 N.W.2d 480, 483 (Iowa 1993). At the

same time, parents have a fundamental liberty interest in raising their children without state intervention.  *See In re M.S.*, 889 N.W.2d at 679. Where those interests conflict, the conflict is to be resolved by a court in an adversary proceeding conducted in accord with chapter 232.  The adversarial nature of the proceeding requires the State to act with diligence in marshaling its evidence and authorities to legally justify State intervention into otherwise private affairs.  The State's interest in protecting a child within its borders does not relieve the State of its burden to timely come forward with the quantum and quality of evidence necessary to adjudicate a child in need of assistance.

**DECISION OF COURT OF APPEALS AFFIRMED; JUVENILE COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**