# IN THE COURT OF APPEALS OF IOWA

No. 23-0101
Filed June 19, 2024

**DEMARRIO DESHON WRIGHT,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, John J. Sullivan, Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

Gregory F. Greiner, West Des Moines, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

DeMarrio Deshon Wright appeals the denial of his second application for postconviction relief. He claims the attorney from his first postconviction action was so defective a structural error occurred. We reject this complaint and affirm.

In 2014, we affirmed Wright's convictions for sexual abuse in the second degree, sexual abuse in the third degree, and indecent contact with a child. *State v. Wright*, No. 12–2138, 2014 WL 956064 (Iowa Ct. App. Mar. 12, 2014). We summarized the facts of conviction in some detail, but for this appeal we only note Wright sexually abused minor child M.W. multiple times. *Id.* at *1–2. We rejected legal issues on direct appeal concerning evidence of sexual abuse Wright perpetrated against M.W. in another state and the effectiveness of counsel in not challenging the trial information on speedy-indictment grounds. *Id.* at *3–7.

In 2020, we affirmed the denial of Wright's first application for postconviction relief. *Wright v. State*, No. 17-1904, 2020 WL 109559, at *4 (Iowa Ct. App. Jan. 9, 2020). We rejected claims trial counsel was ineffective for not doing enough to investigate or present cell-phone location data, not calling Wright's sisters or ex-paramour as witnesses, and not doing enough to investigate DNA evidence. *Id.* at *2–3.

While his first postconviction appeal was pending, Wright filed a second application for postconviction relief. He later amended the application, raising various claims. After motion practice and in a bid to bypass the procedural bars of Iowa Code chapter 822 (2020), he clarified that his claims were limited to those which asserted prior postconviction counsel was ineffective. The matter proceeded to contested trial, and the court heard testimony from Wright and one

of his sisters. The postconviction court denied relief, and Wright appeals, raising only one claim—that his first postconviction counsel was so incompetent there was a "structural error" in that proceeding.

Iowa and federal law recognize three narrow scenarios in which a "structural error" occurs: (1) when "counsel is completely denied, actually or constructively, at a crucial stage of the proceeding"; (2) when "counsel does not place the prosecution's case against meaningful adversarial testing"; or (3) when "surrounding circumstances justify a presumption of ineffectiveness," like when "counsel has an actual conflict of interest in jointly representing multiple defendants." *Lado v. State*, 804 N.W.2d 248, 251–52 (Iowa 2011) (collecting cases). Wright does not identify which of the three buckets he relies on to challenge counsel's performance at his first postconviction trial, so we evaluate each.

As to the first bucket, we know Wright's first postconviction counsel did not stand mute when faced with dismissal as in *Lado*, since the matter was tried and appealed to our court. *See generally Wright*, 2020 WL 109559. Through our independent review of the transcript from the first postconviction trial, which is automatically part of the record here, we also confirm counsel was not actually or constructively absent. *See* Iowa Code § 822.6A (2022). At that first postconviction trial, Wright's attorney called the two typical witnesses in postconviction cases: the applicant and criminal-trial counsel. Both witnesses were examined by postconviction counsel at length, and Wright's claims were developed within the bounds of reasonable competence. As we said before when rejecting a similar claim, "Perhaps [the applicant] would have liked a more zealous advocate, but he

was not constructively without counsel." *Allard v. State*, No. 11-1641, 2013 WL 1227352, at *3 (Iowa Ct. App. Mar. 27, 2013).

As to the second bucket of structural errors, the only example given by the federal Supreme Court involves denial of a criminal defendant's right to confront witnesses under the Sixth Amendment. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (discussing *Davis v. Alaska*, 415 U.S. 308 (1974)). But this type of error cannot be at issue, as there is no constitutional confrontation right in a postconviction case and there is no colorable argument the applicant was prohibited from cross-examining a material witness at the first postconviction trial. *See In re L.K.S.*, 451 N.W.2d 819, 822 (Iowa 1990) ("[I]t is clear that the confrontation clause applies *only* in criminal cases." ). In fact, the State did not call any witnesses at the first postconviction trial—so there was no one to confront— and postconviction counsel examined the only two witnesses who testified. There was also no "prosecution" for the applicant to test; postconviction matters are civil actions in which the State is the respondent and the applicant is the plaintiff. *See* Iowa Code § 822.3. The second bucket of structural error is not in play.

This brings us to the third bucket of structural errors, which occur when "counsel is called upon to render assistance under circumstances where competent counsel very likely could not" possibly perform effectively. *Bell v. Cone*, 535 U.S. 685, 696 (2002); *accord Lado*, 804 N.W.2d at 252. There are two examples for this type of error in controlling case law: actually-conflicted representation of co-defendants and an appointment to represent a capital defendant in an unfamiliar jurisdiction with no preparation. *See Bell*, 535 U.S. at 696 (discussing *Powell v. Alabama*, 287 U.S. 45, 58 (1932)); *Cronic*, 466 U.S.

at 660–61 (same); *Lado*, 804 N.W.2d at 252. Nothing like those claims is at issue here.

What Wright really brings are routine ineffective-assistance challenges, where he claims alleged failures at "specific points" of the proceedings rather than a failure "to oppose the prosecution throughout the [criminal] proceeding as a whole." *Bell*, 535 U.S. at 697. As the Supreme Court has made clear, these specific complaints are "plainly" governed by "*Strickland*'s performance and prejudice components." *Id.* at 697–98. But Wright has not meaningfully briefed the core elements of *Strickland*—deficient performance or the reasonable probability of a different outcome. *See Strickland v. Washington*, 466 U.S. 668, 687–89, 694 (1984).

We acknowledge a single throw-away sentence at the end of Wright's brief references "breached essential duties" and suggests "the result of the proceeding would have been different," but he does not use *Strickland* as the basis for his claim: "Mr. Wright argues structural error." As we cannot develop an argument for Wright, and we decide only the arguments put forward by the parties, we find his *Strickland* claim waived. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). And we have rejected the only claim presented on appeal—structural error.

In the interest of completeness, we note that Wright still would not be owed relief if we were to reach the merits under *Strickland*. We have carefully reviewed the transcript and evidence submitted at Wright's second postconviction trial and find he has not proven by a preponderance of the evidence that trial and first-postconviction counsel acted outside the reasonable bounds of competence, nor has he demonstrated the reasonable probability of a different outcome. *See Strickland*, 466 U.S. at 687, 697.

**AFFIRMED.**