# IN THE COURT OF APPEALS OF IOWA

No. 21-0121
Filed April 14, 2021

**IN THE INTEREST OF S.S. and R.S.,**
**Minor Children,**

**J.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge (adjudication), and Linda M. Fangman, Judge (disposition).

A mother appeals the adjudication of her children as in need of assistance as well as their continued removal following disposition. **AFFIRMED IN PART AND REVERSED IN PART.**

Mark A. Milder, Denver, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Tammy L. Banning of Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., Schumacher, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

A mother appeals the adjudication of her children, born in 2016 and 2019, as in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2020), as well as their continued removal following disposition.[1]

## I. Background

The parents have a long history of domestic violence and violating resulting no-contact orders. The family came to the attention of the Iowa Department of Human Services (DHS) most recently in May 2020 due to the father assaulting the mother in the children's presence. At the time, there was a no-contact order in place between the parents as a result of a prior domestic altercation. The mother was found incapacitated with no one caring for the children. She suffered a broken rib and fractured vertebrae and exhibited facial bruising. The mother received treatment at a hospital, where she tested positive for amphetamines. The mother later reported taking Adderall, which she received from a friend. She also subsequently admitted that she had used methamphetamine a few times with a friend, most recently roughly ten days prior to going to the hospital. The mother was arrested on an outstanding warrant when she was released from the hospital two days later. The maternal grandmother picked up the children and returned to Arkansas with them. The mother was released from jail a few days later. After retrieving the children from Arkansas, the mother agreed to safety planning involving complying with the no-contact order between her and the father and

---

[1] *See In re Long*, 313 N.W.2d 473, 475 (Iowa 1981) (holding an order for adjudication is not final for purposes of appeal until disposition).

abstaining from use of illegal substances. A child-protective assessment was founded for denial of critical care and dangerous substances.

The children remained in the mother's care, but the State filed a petition for CINA adjudication. The mother failed to submit to drug testing throughout July, but she tested negative for all illegal substances late that month. She largely evaded testing in August. On two occasions late that month, she reported for testing but refused when presented with sweat-patch testing. She stated her discomfort with random drug testing through DHS and desire to have all testing be conducted by a third party. In September, DHS sought removal based on the mother's continued refusal to participate in drug testing. The mother became combative with the DHS worker, damaged her vehicle, and was charged with criminal mischief.

An adjudication hearing was held in mid-September, shortly before which the mother provided a negative drug test. However, the DHS worker assigned to the case testified the mother's aggressive behavior was an indicator of ongoing substance-abuse and mental-health issues. At the time of the adjudication hearing, the mother had a warrant out for her arrest and law enforcement officials were present to take her into custody. At the conclusion of the hearing, the court advised it would be removing the children from the mother's care and ordered the mother to provide the children's location. The mother responded she did not know the address but could retrieve the children or take her attorney to their location. The mother was unable to provide an address or correct phone number for the individuals allegedly caring for the children. According to a special incident report filed the next day, law enforcement and service providers searched the community

for the children. Eventually, service providers came into contact with the mother's attorney, who was found at the family's home placing the children in a vehicle and reported she was getting ready to transport them to the DHS office. The mother's attorney stated the children were in the care of a male and female but she did not know who they were. The DHS worker questioned the older child where his father was, and the child responded, "daddy inside." The court adjudicated the children CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n) and placed them in the DHS custody for placement in foster care or with a suitable relative. The mother tested positive for methamphetamine and amphetamines a week after adjudication.

A dispositional hearing was held in January 2021. At the hearing, the mother requested the children be returned to her care. She offered testimony from two service providers who recommended visitation merely progress to semi-supervised. The court ordered continued removal and that the level of supervision of visits be at the discretion of DHS. The mother appeals.

## II.     Standard of Review

Appellate review of CINA proceedings is de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). While not binding upon us, we accord weight to the juvenile court's factual findings, especially when credibility is at issue. *Id.*; *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). Iowa Code section 232.96(2) requires the State to prove its allegations by clear and convincing evidence, which "exists when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *L.H.*, 904 N.W.2d at 149 (alteration in original) (altered for readability) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). "Our

primary consideration is the children's best interests." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014) (citation omitted). "In determining the best interests of the child[ren], 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" *L.H.*, 904 N.W.2d at 149 (second alteration in original) (citation omitted).

### III.    Analysis

#### A.    Adjudication

First, the mother argues the State failed to meet its burden to support adjudication under section 232.2(6)(c)(2), which defines a CINA as an unmarried child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of" "[t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." The mother asserts the only instance of a failure to supervise the children was when she was incapacitated at the hands of the father during a domestic altercation. She adds "[t]here was no indication that the father was present in the home or that he had been in contact with the children or mother."

The term "harmful effects" "pertains to the physical, mental or social welfare of a child." *J.S.*, 846 N.W.2d at 41 (citation omitted). Such effects are "established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 42. And harmful effects "need not 'be on the verge of happening before adjudicating a child as one in need of assistance.'" *L.H.*, 904 N.W.2d at 151.

Here, the parents have a long history of domestic violence. Despite the entry of various no-contact orders, the parents have continued their relationship. And, contrary to the mother's claim, the record discloses the mother continued to

have contact with the father and allowed him to be around the children. Specifically, the record shows the father was caring for the children while the mother attended the adjudication hearing. We doubt this was the only instance of the mother allowing the father to be around the children. "[C]hildren living in a home with a batterer have a 70 percent chance of becoming the victim of abuse themselves" and "[c]hildren from violent homes may also experience impaired social competence and even post-traumatic stress disorder." *Id.* at 153 (second alteration in original) (citations omitted); *accord In re D.S.*, No. 19-0003, 2019 WL 1474054, at *3 (Iowa Ct. App. Apr. 3, 2019) (agreeing a parent's "violent tendencies can negatively and dangerously affect the wellbeing and safety of the child"); *In re J.R.*, No. 17-0556, 2017 WL 2684405, at *3 (Iowa Ct. App. June 21, 2017) ("The threat to children posed by domestic violence in their home may serve as the basis for terminating parental rights. Our case law has recognized: 'Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity, and a greater likelihood for later problems in interpersonal relationships.' In addition, 'domestic abuse places children at a greater risk of being physically abused.'" (internal citations omitted)); *In re K.L.*, No. 17-0346, 2017 WL 2465817, at * 1 (Iowa Ct. App. June 7, 2017) (noting "a long history of involvement in violent and otherwise inappropriate relationships pos[es] an appreciable risk of adjudicatory harm to the children").

Upon our de novo review, we conclude the mother allowing the father to have contact with the children and to care for them amounts to a failure "to exercise a reasonable degree of care in supervising the child[ren]" that exposed them to an imminent likelihood of suffering harmful effects. *See* Iowa Code § 232.2(6)(c)(2).

In addition, after the domestic altercation, the mother admitted to using methamphetamine a little more than a week earlier. While the mother provided two negative drug screens in July and September 2020, she largely evaded drug testing. And evidence was presented at the adjudication hearing that the mother continued to exhibit behavioral indicators of methamphetamine use. "[U]nder Iowa Code section 232.6(c)(2) . . . 'a juvenile court [can] reasonably determine that a parent's active addiction to methamphetamine is "imminently likely" to result in harmful effects to the physical, mental or social wellbeing of the children in the parent's care.'" *L.H.*, 904 N.W.2d at 150–51 (citation omitted). We affirm adjudication under section 232.2(6)(c)(2).

We turn to the mother's evidentiary challenge to adjudication under section 232.2(6)(n), which defines a CINA as an unmarried child "[w]hose parent's . . . mental capacity or condition . . . or drug or alcohol abuse results in the child not receiving adequate care." While methamphetamine use can expose children to an imminent likelihood of suffering harmful effects pursuant to section 232.2(6)(c)(2), "the mere fact of use does not establish adjudicatory harm" pursuant to section 232.2(6)(n). *See In re M.S.*, 889 N.W.2d 675, 682 (Iowa Ct. App. 2016). Section 232.2(6)(n) "does not include the term 'imminently likely' found in section 232.2(6)(c)(2) but rather requires proof of facts that a lack of adequate parental care has already occurred." *In re E.M.*, No. 20-1722, 2021 WL 811135, at *2 (Iowa Ct. App. Mar. 3, 2021).

On this ground for adjudication, the State argues the father's mental health and the mother's substance abuse resulted in the children not receiving adequate care. The State relies solely on the children being left unsupervised during and

after the father's assault of the mother. But adjudication under paragraph (n) requires establishment of a nexus between a parent's mental capacity or substance abuse and the children not receiving adequate care. *See* Iowa Code § 232.2(6)(n) (defining a CINA as an unmarried child whose parent's "mental capacity or condition . . . or drug or alcohol abuse *results* in the child not receiving adequate care" (emphasis added)); *M.S.*, 889 N.W.2d at 682–83. The State failed to establish any nexus between the father's mental health and the father's assault of the mother or, in turn, the children receiving inadequate care as a result thereof. The same holds true as to the mother's substance abuse in relation to the assault. We therefore find insufficient evidence to support adjudication under section 232.2(6)(n), and we reverse adjudication on that ground.

B.    Removal

Next, the mother argues "[t]here was no factual or legal basis to remove the children at the adjudication hearing." Because "[w]e cannot go back in time and restore custody based on alleged errors in the initial removal order," that issue is moot. *See In re A.M.H.,* 516 N.W.2d 867, 871 (Iowa 1994). However, we are able to review the mother's challenge to continued removal at the time of disposition. In support of her challenge, the mother points to service-provider testimony at the dispositional hearing that the mother was cooperative with services, there were no safety concerns during visits, they did not suspect drug usage, and they had no concerns for the father being around or domestic violence.

Following a dispositional hearing, "the court shall make the least restrictive disposition" of those "listed in sections 232.100 through 232.102 in order from least to most restrictive." Iowa Code § 232.99(4). Children should be in the home with

a parent whenever possible unless there is clear and convincing evidence they "cannot be protected from physical abuse" or "some harm which would justify the adjudication of the child[ren] as" CINA. *Id.* § 232.102(4)(a).

Upon our de novo review, and given our consideration of the parents' history of domestic violence, violation of ensuing no-contact orders, the mother's minimization of the father's abuse, her dishonesty, and continuing suspicions about the mother's substance abuse, we agree with the juvenile court that returning the children to the mother's care would, at this time, be contrary to the children's best interests, which is our primary consideration. *See id.* § 232.102(4)(b); *D.D.*, 653 N.W.2d at 362. We affirm the children's continued removal.

## IV.     Conclusion

We affirm adjudication of the children under section 232.2(6)(c)(2) but reverse adjudication under section 232.2(6)(n). We affirm the juvenile court's order for continued removal at the time of disposition.

**AFFIRMED IN PART AND REVERSED IN PART.**