# IN THE COURT OF APPEALS OF IOWA

No. 21-1210
Filed January 12, 2022

**IN THE INTEREST OF C.J., C.J., N.J., and N.P.-R.,**
**Minor Children,**

**C.P., Mother,**
　　　Appellant.

_____

　　　Appeal from the Iowa District Court for Polk County, Brent Pattison, District Associate Judge.

　　　A mother appeals the adjudication of her four children as in need of assistance as well as continued removal following disposition. **AFFIRMED.**

　　　Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　　Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

　　　Alexandra M. Nelissen of Advocate Law, PLLC, Clive, attorney for minor child C.J.

　　　Considered by Bower, C.J., Badding, J., and Scott, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCOTT, Senior Judge.**

A mother appeals the adjudication of her four children—born in 2010, 2011, 2013, and 2019—as in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2021), as well as continued removal following disposition.[1]

## I.       Background

This family came to the attention of the Iowa Department of Human Services (DHS) in March 2021 upon concerns regarding the mother's substance abuse and supervision of the children, as well as the cleanliness and safety of the home.  Later that month, the mother presented behavioral indicators of substance abuse in the presence of a social worker, but the mother explained her behavior was a result of Grave's disease, a thyroid condition, which the worker had no reason to disbelieve. The mother had recently refused requests that she and the children be tested for drugs.  She was also recently found in her vehicle at a convenience store, asleep at the wheel, with two of the children in the vehicle with her.  While law enforcement believed the mother to be impaired, no charges were initiated, although the mother was arrested on unrelated warrants.  The mother agreed to a safety plan involving the children staying with the maternal grandmother.

In mid-April, a social worker went to the family home, where police were already present in relation to the mother's dog biting a pedestrian.  The mother barricaded herself and the youngest child inside of the home.  The police officers opined the mother was under the influence of an unknown substance.  The officers

---

[1] *See In re Long*, 313 N.W.2d 473, 475 (Iowa 1981) (holding an order for adjudication is not final for purposes of appeal until disposition).

called a locksmith to facilitate entering the home to arrest the mother, but the mother escaped through a side window with the child in tow. The mother did not respond to communication attempts from the social worker to safety plan the child into relative care. When the officers entered the home, they found marijuana. Based on the foregoing and the mother's refusal to cooperate with DHS, the State sought and obtained an order for temporary removal of all children.

A removal hearing was held over four days in the ensuing weeks, on April 22 and May 11, 12, and 24. By the first day of the hearing, the children had been placed in foster care due to the grandmother not following the safety plan and looming concerns about her being involved with methamphetamine. Also, the whereabouts of the youngest child were unknown; upon questioning from the court, the mother's counsel agreed the child was in the mother's physical custody despite the prior entry of a removal order. Yet, the mother requested the children be placed in the grandmother's care and that the mother be able to reside in the home. In response, the State highlighted the foregoing concerns about the grandmother and added that two of the children recently tested positive for methamphetamine. The mother presented exhibit evidence that disclosed the mother suffered from untreated hypothyroidism, symptoms of which can include, "tiredness, depression, slow movements/thoughts, decreased short-term memory, muscle aches and weaknesses," and "[l]ess commonly, confusion, disorientation, and psychosis." The mother also submitted a drug screen she underwent the day before, which was "[n]egative for all drugs tested." Following the first day of the hearing, the court ordered the children remain in foster care but that DHS explore

the grandmother as a temporary placement. The mother turned custody of the youngest child over to DHS following the hearing.

Prior to the second and third day of the removal hearing, the mother filed a "motion to strike the State's unauthorized drug testing exhibits and amended CINA petitions," targeting the drug tests of the children and the resulting amended petitions pursuing adjudication under section 232.2(6)(o), relative to illegal drugs being present in the children's bodies. At the hearing, the court reserved ruling on the admissibility of such evidence, but ultimately ruled the evidence would be received in evidence. The exhibits and testimony presented show the mother recently tested positive for marijuana; all four children tested positive for methamphetamine, the youngest shortly after the mother gave custody of the child to DHS; and the youngest child also tested positive for marijuana. The three older children were not compliant with hair testing, as the mother had advised them they do not have to comply with DHS, so their samples were insufficient to test for marijuana.

While the DHS worker agreed services could be provided relative to supervision of the children if returned to the mother's care following the removal hearing, she opined such services would not be successful. Regardless of whether the mother was under the influence or suffering from symptoms from her thyroid issue when she was found asleep at a convenience store with two of the children in her care, the worker was concerned for the mother's ability to supervise the children. In her testimony, the maternal grandmother agreed the mother has ongoing medical issues associated with her thyroid condition. However, she testified the mother has stabilized due to medication since the convenience-store

incident. At the time the third day of the removal hearing concluded, the children were in the temporary care of a maternal aunt, as the recent foster placement could no longer care for the children. The aunt could only briefly care for the children, and the prospective foster placement could not immediately take the children in. DHS had explored the maternal grandmother as a potential placement, but she refused to comply with a drug test, and the mother explained the grandmother would likely test positive for marijuana. The court encouraged the grandmother to undergo a drug screen, and the mother's counsel assured the court and parties he would make sure she did so the next day. About a week after the third day of the hearing, the mother filed a motion for placement of the children with the maternal grandmother, arguing the grandmother complied with drug testing, but the children were placed in foster care instead of her care following the hearing.

The evidence presented at the fourth day of the hearing discloses the grandmother agreed to undergo a urinalysis test but refused to undergo a hair-stat test. The mother testified she has not used marijuana in over eleven years and has never used methamphetamine. She professed she was not asleep during the convenience-store incident, claiming she was cleaning out her vehicle. In contrast to the grandmother's testimony that the mother is now stable as a result of medication, the mother testified her condition "still isn't regulated" and agreed she has not adequately tended to her condition for quite some time.

The court ultimately confirmed removal. The court noted its conclusions that the mother's denial of drug use did not add up and her lack of cooperation with DHS bolstered the continuing need for removal. The court did not rule out the grandmother as a placement in the future but remained concerned for her refusal

to submit to a hair test; her admitted daily and illegal use of marijuana for pain management; and her ability to properly care for four children without relying on regular, illegal drug use.

The matter proceeded to an adjudication hearing in late June, at which the mother did not appear. By that point, the three older children were in the care of their father's girlfriend and the youngest in the care of the paternal grandmother; all children were happy and healthy. The maternal grandmother had undergone additional drug testing as recommended, and she tested positive for methamphetamine. Also, the mother claimed to be participating in substance-abuse and mental-health treatment, but she refused to sign releases in order to provide DHS with an ability to verify her participation. Following the hearing, the court adjudicated the children as CINA pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o).

A dispositional hearing was held in August, at which the mother continued to request that the children be returned to her care or placed in the maternal grandmother's care. By that point, the mother had undergone a substance-abuse evaluation and no treatment was recommended. During her assessment, however, the mother reported she had not used illicit drugs in twelve years, which is inconsistent with drug testing during these proceedings. She had recently been requested to submit to drug testing on two occasions. She failed to appear for the first, but showed up the day after and provided a urinalysis negative for drugs. She failed to appear for administration of a sweat patch about two weeks later. She also began participating in mental-health treatment, but her attendance was inconsistent. Following the dispositional hearing, the court concluded the children

could not yet be placed in the mother's care, but was open to placing the children with her in residential treatment after she initiated such treatment and demonstrated some stability.

The mother appeals.

## II. Standard of Review

Appellate review of CINA proceedings is de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). While not binding upon us, we accord weight to the juvenile court's factual findings, especially when credibility is at issue. *Id.*; *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). Iowa Code section 232.96(2) requires the State to prove its allegations by clear and convincing evidence, which "exists when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *L.H.*, 904 N.W.2d at 149 (alteration in original) (internal quotation marks omitted) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). "Our primary concern is the children's best interests." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In determining the best interests of the child[ren], 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" *L.H.*, 904 N.W.2d at 149 (second alteration in original) (citation omitted).

## III. Analysis

### A. Adjudication

The mother challenges the sufficiency of the evidence supporting each of the grounds for adjudication—Iowa Code section 232.2(6)(c)(2), (n), and (o).

Iowa Code section 232.2(6)(c)(2) defines a CINA as an unmarried child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of"

"[t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Section 232.2(6)(n) defines a CINA as an unmarried child "[w]hose parent's . . . mental capacity or condition . . . or drug or alcohol abuse results in the child not receiving adequate care." As to both of these grounds for adjudication, the mother simply argues she never tested positive for methamphetamine, she testified she has not used marijuana in several years, and her behavior resulted from her thyroid condition.

The term "harmful effects" relative to section 232.2(6)(c)(2) "pertains to the physical, mental or social welfare of [the] child[ren]." *J.S.*, 846 N.W.2d at 41 (citation omitted). Such effects are "established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 42. And harmful effects "need not 'be on the verge of happening before adjudicating a child as one in need of assistance.'" *L.H.*, 904 N.W.2d at 151 (citation omitted). Section 232.2(6)(n) "does not include the term 'imminently likely' found in section 232.2(6)(c)(2) but rather requires proof of facts that a lack of adequate parental care has already occurred." *In re E.M.*, No. 20-1722, 2021 WL 811135, at *2 (Iowa Ct. App. Mar. 3, 2021).

Here, regardless of whether the mother's behavior was a result of substance abuse or her thyroid condition, the mother was found asleep at the wheel of a vehicle parked at a convenience store, with two of the children in her care. Even assuming her medical condition, which affects her mental capacity, was the driving factor behind this incident and considering the mother's failure to monitor and seek treatment for her condition, which still remained unregulated based on her lengthy inattention to her treatment needs, the mother's condition

renders the children imminently likely to suffer harmful effects as a result of the mother's failure to exercise a reasonable degree of care in supervising the children and also results in them not receiving adequate care. *See* Iowa Code § 232.2(6)(c)(2), (n). If the mother's unregulated condition debilitates her into a state of lethargy or unconsciousness, she cannot provide adequate supervision or care to the children if in her care. The result would be the same regardless of whether the incident was caused by drug use or her medical condition, and there is clear and convincing evidence that the mother uses marijuana, which could explain the indicators the mother exhibited to the police. We find the evidence clear and convincing to support these grounds for adjudication.

As to adjudication under section 232.2(6)(o), the mother argues the evidence was lacking "that the children tested positive for [m]ethamphetamine due to the actions of" her, arguing it was most likely due to the actions of the maternal grandmother. Section 232.2(6)(o) defines a CINA as an unmarried child "[i]n whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian." Even if the presence of methamphetamine in the children was due to the grandmother's use, the mother was fully aware of the looming concerns about the grandmother's methamphetamine use and still allowed the grandmother to care for the children and repeatedly requested the children be re-placed in her care during the proceedings. Being aware of the concerns for the grandmother's use, the presence of methamphetamine and amphetamines in the children was a direct and foreseeable consequence resulting from the mother allowing the grandmother to care for the children and be around them. In addition, up until the youngest child

tested positive for methamphetamine and marijuana, that child remained in the care of the mother. And, at the direction of the mother, the other three children were resistant to hair testing and, consequently, their samples were insufficient to test for marijuana. The mother tested positive for marijuana around the same time. This is additional direct evidence supporting adjudication as to the youngest child and circumstantial as to the other three, and direct and circumstantial evidence are equally probative. *Godfrey v. State*, 962 N.W.2d 84, 102 (Iowa 2021).

To the extent the mother argues the court erred in not striking the drug tests of the children on the basis that said tests were not authorized, we agree with the juvenile court that Iowa Code section 232.77, which the mother does not address in her petition on appeal, authorized such testing.

We affirm adjudication under each ground cited by the juvenile court.

B.     Continued Removal

The mother argues the court erred in ordering continued removal of the children following the dispositional hearing. She highlights that she recently underwent a substance-abuse evaluation recommending no treatment, was working with her physician on her thyroid condition, and had been engaged with a mental-health therapist. But the mother clearly lied during her substance-abuse evaluation, and her dishonesty about her drug use permeated the proceedings and was a continuing basis for the need for removal. While the mother stated she has been getting her thyroid checked, she agreed "it's still not at the right levels." If the condition is still not in check, which is unsurprising given the mother's prolonged inattention to the condition prior to juvenile court involvement, the resulting symptoms of the condition remain a continuing concern warranting a continuing

need for removal.  Lastly, while the mother began mental-health therapy, her attendance was inconsistent leading up the dispositional hearing, and she had yet to show any meaningful progress.  Upon our review, we affirm the order for continued removal following disposition.

**IV.    Conclusion**

We find the evidence sufficient to support each of the statutory grounds for adjudication cited by the juvenile court and affirm the order for continued removal following disposition.

**AFFIRMED.**